# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELEBRITY CHEFS TOUR, LLC, a California limited liability company; and PROMARK PRODUCTIONS, LLC, a California limited liability company,<br><br>  Plaintiffs,<br><br>vs.<br><br>MACY'S, INC, a Delaware corporation; WHIRLPOOL CORPORATION, a Delaware corporation; LEC MEDIA, LLC, an Illinois limited liability company; EXECUTIVE PROGRAM SERVICES, INC., a Washington corporation; JACK O'DONNELL, an individual; SCOTT DUMMLER, an individual; DEVIN ALEXANDER, INC, a California corporation; DEVIN ALEXANDER, a.k.a. RENEE SIMONE, an individual; and DOES 1–10, inclusive,<br><br>  Defendants. | CASE NO. 13-CV-2714 JLS (KSC)<br><br>**ORDER: (1) GRANTING DEFENDANT WHIRLPOOL CORPORATION'S REQUEST FOR JUDICIAL NOTICE; AND (2) GRANTING DEFENDANT WHIRLPOOL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>(ECF No. 21) |

Presently before the Court is Defendant Whirlpool Corporation's ("Whirlpool") Motion to Dismiss ("MTD") Plaintiffs Celebrity Chefs Tour, LLC ("CCT") and Promark Productions, LLC's ("Promark," and, collectively, "Plaintiffs") Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 21.) Also before the Court are Whirlpool's Request for Judicial Notice ("RJN") (ECF No. 21-2), Plaintiffs' RJN (ECF No. 36),[1] and Plaintiffs' Response in Opposition to (ECF No. 38) and Whirlpool's Reply in Support of (ECF No. 42-2) the Motion. The hearing for the Motion was vacated and the matter taken under submission without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 54.) Having considered the parties' arguments and the law, the Court **GRANTS** Whirlpool's RJN and **GRANTS** Whirlpool's MTD.

## BACKGROUND

The Court thoroughly summarized the factual and procedural background of this case in ruling on a related motion to dismiss, and accordingly the Court hereby incorporates by reference the background as set forth therein. (*See* Order 2–7, ECF No. 78.)

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

---

[1] The Court has already granted Plaintiffs' RJN. (*See* Order 8–9, ECF No. 78.)

Whirlpool asks the Court to judicially notice the same eleven (11) documents the Court judicially noticed in its April 25, 2014 Order. (*See* RJN, ECF No. 21-2; Order 8–9, ECF No. 78.) All of these documents are available to the public and are certified and maintained by an official office. Their accuracy cannot therefore be reasonably disputed. Accordingly, the Court **GRANTS** Whirlpool's RJN as to all eleven (11) documents. However, the Court does not take notice of the truth of the facts asserted therein.

## MOTION TO DISMISS

### I.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*,

550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.

## II.  Analysis

Plaintiffs assert the following seventeen claims: (1) breach of contract (Macy's); (2) breach of contract (Dummler, LEC, and O'Donnell); (3) breach of contract (Alexander); (4) intentional misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (5) negligent misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (6) conversion (all Defendants); (7) trademark infringement (all Defendants); (8) false designation of origin (all Defendants); (9) trademark dilution (all Defendants); (10) common law unfair competition (all Defendants); (11) unfair competition in violation of California Business and Professions Code § 17200 (all Defendants); (12) misappropriation of ideas (all Defendants); (13) intentional interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (14) intentional interference with prospective economic advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (15) negligent

interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (16) negligent interference with prospective economic advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); and (17) declaratory relief (EPS, LEC, Macy's, and Whirlpool).[2]  The Court addresses each in turn.

### A.   *Request for Punitive Damages*

As a preliminary matter, Whirlpool challenges Plaintiffs' "generalized" claims for punitive damages. (MTD 20, 11 n.5, ECF No. 21-1.) The Court, however, declines to rule on the propriety of Plaintiffs' requests for punitive damages, because a Rule 12(b)(6) motion is the improper vehicle for raising this argument. Rather, Whirlpool should have addressed this issue in a Rule 12(f) motion to strike. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1300 (S.D. Cal. 2011); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000); *Clement v. Am. Greetings Corp.*, 636 F. Supp. 1326, 1332, 1333–34 (S.D. Cal. 1986).

### B.   *Claim 6: Conversion*

The elements of a claim for conversion consist of (1) ownership or a right to possession, (2) wrongful disposition of the property, and (3) damages. *G. S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Moreover, § 229 of the Restatement (Second) of Torts provides:

> One who receives possession of a chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel.

California Courts have cited approvingly to § 229. *See, e.g.*, *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 157 n.4 (1990); *Strutt v. Ontario Sav. & Loan Ass'n*, 28 Cal. App. 3d 866, 874–75 (1972).

Whirlpool argues that Plaintiffs' conversion claim fails because Plaintiffs do not allege that Whirlpool converted the CCT Assets, but only that one or more of

---

[2] Whirlpool does not seek to dismiss this seventeenth claim, and accordingly this Order does not address it.

Defendants "turned over possession" of the CCT Assets to Whirlpool. (MTD 8, ECF No. 21-1 (quoting Compl. ¶ 120, ECF No. 1).) Whirlpool claims that, as a mere receiver of the CCT Assets, it cannot be held liable for conversion. (*Id.* at 9.) Moreover, Whirlpool purports that Plaintiffs voluntarily gave the CCT Assets to LEC and have neither asked for their return nor accepted LEC's offers to return them. (*Id.* at 9–10.) Plaintiffs argue that they properly allege conversion because "an action for conversion lies not only in the taking of another's property, but also in the wrongful retention and/or use of that property." (Pls.' Resp. in Opp'n 8, ECF No. 38.)

The Court finds that Plaintiffs' conclusory allegations are insufficient to establish that Whirlpool converted the CCT Assets. Plaintiffs' allegations against Whirlpool can be summarized as follows: LEC, Dummler, and O'Donnell have told public television stations that Whirlpool is a producer and owner of GACT (Compl. ¶ 85, ECF No. 1); Whirlpool has called GACT by other names to deceive the public (*Id.* ¶ 86); unspecified Defendants "have turned over possession of some or all of the CCT Assets to Macy's and/or Whirlpool" (*Id.* ¶ 120); and unspecified Defendants "have been using and distributing the CCT Assets for airing on public broadcasting stations nationwide, for their own benefit" (*Id.* ¶ 121). These allegations are simply insufficient to establish that Whirlpool ever had possession of the CCT Assets, much less that Whirlpool intended to acquire a proprietary interest in the CCT Assets. While Plaintiffs clearly allege that Alexander and Macy's used the CCT Assets or Plaintiffs' intellectual property and referred to such content as their own, the same cannot be said of Whirlpool. (*See, e.g.*, *id.* ¶¶ 80–81.) Accordingly, Plaintiffs fail to make out a claim for conversion against Whirlpool, and the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to this claim.

C. *Claims 7 & 8: Trademark Infringement and False Designation of Origin*

To state a claim for federal trademark infringement under the Lanham Act, a plaintiff must show: "'(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted). A claim for false designation of origin is subject to "[t]he same standard," except a claim for false designation of origin does not require that the mark be registered. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. §§ 1114(1) (trademark infringement), 1125(a)(1) (false designation of origin)). Thus, the Court analyzes these claims jointly.

Whirlpool argues that Plaintiffs' Complaint "makes clear that Whirlpool's role in sponsoring the TV Show was to provide appliances for the TV Show based on an agreement Whirlpool had with Macy's, not" with Plaintiffs. (MTD 10, ECF No. 21-1.) Thus, Plaintiffs cannot plead facts establishing a trademark infringement claim against Whirlpool. (*Id.* at 10–11.) The Court agrees that Plaintiffs' Complaint is insufficient. Plaintiffs' allegations that Defendants generally "have used and are using" the GACT mark, supported by other facts alleged elsewhere in the Complaint, make out colorable claims as to some Defendants; however, these bare and unsupported allegations are insufficient with regard to Whirlpool. (*See* Compl. ¶¶ 126, 132.) Accordingly, because Plaintiffs have not adequately pleaded Whirlpool's use of the GACT mark, Plaintiffs have not satisfactorily pleaded claims for either trademark infringement or false designation of origin, and thus the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to these two claims.

### D.     *Claim 9: Trademark Dilution*

To plead a claim for federal trademark dilution, a plaintiff must show that it owns a famous and distinctive trademark, that the defendant began using the mark in commerce after the mark became famous, and that the defendant's use of the mark is likely to cause dilution by blurring or tarnishment. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089–90 (9th Cir. 2010) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007)); *see also* 15 U.S.C. § 1125(c).

The parties disagree as to whether Plaintiffs adequately allege a famous mark. However, the Court need not address this issue given the Court's determination that

Plaintiffs have inadequately pleaded Whirlpool's use of the mark.  (*See supra* p. 7.)  Accordingly, because Whirlpool cannot dilute a mark it has not used, the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to this claim.

### E. Claim 10: Common Law Unfair Competition

"'The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another . . . [, or] acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997), *not followed on other grounds by McKendall v. Crown Control Corp.*, 122 F.3d 803 (1997) (alteration in original) (quoting *Bank of the W. v. Superior Court*, 2 Cal 4th 1254, 1263 (1992)); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008).  "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection."  *Bank of the W.*, 2 Cal 4th at 1263 (citation omitted).  "The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct."  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) (citations omitted).

Whirlpool argues that Plaintiffs' claim of common law unfair competition must be dismissed because Plaintiffs hold a valid, registered trademark.  (*See* MTD 14, ECF No. 21-1.)  While the Court believes this argument is incorrect,[3] the Court nevertheless

---

[3] Courts have routinely entertained claims for both trademark infringement and common law unfair competition, implying that the two causes of action are not mutually exclusive, particularly at the pleading stage. *See, e.g.*, *Hokto Kinoko*, 810 F. Supp. 2d 1013; *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[T]he Ninth Circuit 'has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims under the Lanham Act.' . . . Therefore, the Court jointly analyzes Plaintiff's trademark infringement, false designation of origin, state statutory unfair competition, and state common law unfair competition claims."); *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197 (C.D. Cal. 2012); *Vallavista Corp. v. Amazon.com, Inc.*, 657 F. Supp. 2d 1132 (N.D. Cal. 2008); *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233 (E.D. Cal. 2007); *Area 55, Inc. v. Pandamerican LLC*, No. 10-CV-269-H (NLS), 2010 WL 3564715 (S.D. Cal. Sept. 10,

finds, on the facts before it, that Plaintiffs have failed to plead a claim for common law unfair competition against Whirlpool. As explained above, Plaintiffs fail to provide more than conclusory allegations that Whirlpool used the GACT mark. Moreover, while Plaintiffs allege that *other* Defendants represented Whirlpool's ownership interest in GACT, Plaintiffs at no point allege that *Whirlpool itself* tried to "pass off" GACT as its own. (*See, e.g.*, Compl. ¶¶ 78 (alleging that "*LEC* was concerned that Macy's and/or Whirlpool may hold or claim to hold some interest" in GACT), 85 (stating that "*LEC, Dummler, and O'Donnell* . . . have misrepresented that they, Macy's, and Whirlpool produced and are the owners of" GACT), 86 (claiming that Whirlpool has called GACT by other names to deceive the public, but not that Whirlpool is claiming GACT as its own) (emphasis added).) Accordingly, the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to this claim.

### F.   Claim 11: Violation of California Business and Professions Code § 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

"An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985) (internal quotation marks omitted) (quoting *People v. McKale*, 25 Cal. 3d 626, 631–32 (1979)). "[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (internal quotation marks and citations omitted). Plaintiffs argue that, because Whirlpool's actions constitute business practices, and because those acts "form the basis of several other claims for relief" in the Complaint, Plaintiffs have satisfactorily alleged unlawful business activities. (Pls.' Resp. in Opp'n 13, ECF No. 38.) However, for the reasons expressed elsewhere in this Order, the Court determines

---

2010); *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426 (1997).

that Plaintiffs have failed to allege any unlawful acts on Whirlpool's part.  Accordingly, because Plaintiffs have not pleaded any predicate legal violations, Plaintiffs cannot allege unlawful business activities in violation of the UCL.

Plaintiffs also claim to have pleaded unfair business practices by "alleg[ing] that [Plaintiffs] invented, developed, and shot a television show, and that Defendant took that television show (including both the concept and the raw footage), made a very slight change to its name and then began airing Plaintiff's [*sic*] footage as a competing television show."  (Pls.' Resp. in Opp'n 12, ECF No. 38.)  The Court, however, disagrees.  Under the UCL, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 973 P.2d at 544.  But, Plaintiffs make no plausible allegations of wrongdoing against Whirlpool.  And, even if they did, Plaintiffs' allegations do not concern acts that violate the spirit of the antitrust laws, such as horizontal price fixing, exclusive dealing, or monopolization.  *See Cel-Tech Commc'ns*, 973 P.2d at 544 (explaining that, under the UCL, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.").  Accordingly, Plaintiffs do not allege unfair practices within the meaning of the UCL.

Finally, Plaintiffs argue that Whirlpool has engaged in fraudulent business practices by promoting the show under a confusingly similar name.  (Pls.' Resp. in Opp'n 13, ECF No. 38.)  However, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to UCL claims grounded in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party to "state with particularity the circumstances constituting the fraud."  A plaintiff accordingly must include the "who, what, when, where, and how" of the misconduct charged.  *Vess*

1 *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Plaintiffs merely allege that Whirlpool "ha[s] referred to the TV Show as 'America's Chefs On Tour' (and various other names)" "in an effort to deceive the public." (Compl. ¶ 86, ECF No. 1.)  This single, conclusory allegation is insufficient to show that Whirlpool has engaged in fraudulent behavior.  Accordingly, Plaintiffs have not successfully pleaded that Whirlpool violated the UCL, and thus the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to this claim.

### G.   Claim 12: Misappropriation of Ideas

The Court finds that Plaintiffs' twelfth claim is preempted by the Copyright Act of 1976 ("the Act").  "Preemption occurs when (1) the work at issue comes within the subject matter of copyright and (2) the rights granted under state law are 'equivalent to any of the exclusive rights within the general scope of copyright' set forth in the Act." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000) (quoting *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)).

First, because Plaintiffs' ideas have been affixed in a tangible, copyrighted work—the GACT footage—Plaintiffs' work comes within the subject matter of copyright. *See id.* at 1057–59.  Second, the rights afforded by the Act are equivalent because Plaintiffs "allege an implied-in-fact contract not to use [their] ideas and concepts . . . without compensating [them]," rather than a contract that "protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution, or display." *Id.* at 1062, 1060–61 (citation omitted).  Accordingly, Plaintiffs' twelfth claim is preempted, and therefore this Court **GRANTS WITH PREJUDICE** Whirlpool's MTD as to this claim.

### H.   Claim 13: Intentional Interference with Contractual Relations

According to the Supreme Court of California,

> "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."

*Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The third element incorporates a requirement that the defendant's "alleged wrongful or unjustified conduct caused the breach." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).

Whirlpool argues that Plaintiffs' general allegations are insufficient, because they do not identify with which contracts between which parties Whirlpool allegedly interfered. (MTD 18, ECF No. 21-1.) Whirlpool further suggests that Plaintiffs cannot allege "a causal nexus between Plaintiffs' alleged damages and Whirlpool's purported interference." (*Id.*) The Court agrees with Whirlpool.

In paragraph 162 of the Complaint, Plaintiffs claim to allege intentional acts on Whirlpool's part designed to induce third parties to breach their contracts with Plaintiffs: "Despite knowing of these contracts and existing business relationships, said Defendants, and each of them, intentionally interfered with those contracts and business relationships." (Pls.' Resp. in Opp'n 14, ECF No. 38.) Neither this statement nor any other part of the Complaint, however, identifies what acts Whirlpool purportedly undertook to induce third parties to breach their contracts with Plaintiffs, or why Whirlpool, rather than other forces, was the cause of said breach(es). For instance, LEC purportedly breached its contract with Plaintiffs by, among other things, refusing to turn over the CCT Assets to Plaintiffs. (*See* Compl. ¶ 95, ECF No. 1.) However, the Complaint in no way suggests that Whirlpool urged LEC to hang on to the CCT Assets. On the face of the Complaint, it is just as possible that LEC decided on its own to refuse to return the CCT Assets. Thus, Plaintiffs fail to allege either Whirlpool's intentional acts or causation. Accordingly, Plaintiffs fail to state a plausible claim for intentional interference with contractual relations, and thus the Court **GRANTS WITHOUT PREJUDICE** Whirlpool's MTD as to this claim.

### I.     *Claims 14 and 16: Intentional and Negligent Interference with Prospective Economic Advantage*

"[A]s a matter of law, a threshold causation requirement exists for maintaining

1 a cause of action for either [intentional or negligent interference with prospective
2 economic advantage], namely, proof that it is reasonably *probable* that the lost
3 economic advantage would have been realized but for the defendant's interference."
4 *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997) (emphasis in
5 original). But the Court has already found, with regards to Plaintiffs' thirteenth claim,
6 that Plaintiffs fail to establish that Whirlpool caused Plaintiffs' harm. (*See supra* p.
7 13–14.) Accordingly, Plaintiffs fail to state claims for interference with prospective
8 economic advantage, and therefore the Court **GRANTS WITHOUT PREJUDICE**
9 Whirlpool's MTD as to both claims.

### J. Claim 15: Negligent Interference with Contractual Relations

Finally, Whirlpool contends that this claim must be dismissed because California does not recognize the tort of negligent interference with contractual relations. (MTD 18, ECF No. 21-1.) The Court agrees and accordingly **GRANTS WITH PREJUDICE** Whirlpool's MTD as to this claim. *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636–37 (1960) (explaining that California courts "have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties," and refusing to recognize said cause of action because "to so hold would constitute an unwarranted extension of liability for negligence"); *see also Express Diagnostics Int'l, Inc. v. Tydings*, No. C 06-01346 JW, 2009 WL 111736, at *7 n.14 (N.D. Cal. Jan. 15, 2009) (citation omitted) ("[T]he Supreme Court [of California] has yet to disapprove *Fifield*.").

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Whirlpool's Request for Judicial Notice and **GRANTS** Whirlpool's Motion to Dismiss. Dismissal is **WITHOUT PREJUDICE** as to claims 6, 7, 8, 9, 10, 11, 13, 14, and 16, and **WITH PREJUDICE** as to claims 12 and 15, as amendment of the latter claims would be futile. *See DeSoto*, 957 F.2d at 658.

If Plaintiffs wish, they **SHALL FILE** an amended complaint within fourteen (14) days of the date on which this Order is electronically docketed. *Failure to file an amended complaint by this date may result in dismissal of Plaintiffs' claims against Whirlpool with prejudice.*

**IT IS SO ORDERED**.

DATED:  April 25, 2014

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge