1
2
3
4
5
6
7
8
9          **UNITED STATES DISTRICT COURT**

10        **SOUTHERN DISTRICT OF CALIFORNIA**

11  | CELEBRITY CHEFS TOUR, LLC, | CASE NO. 13-CV-2714 JLS (KSC) |

CELEBRITY CHEFS TOUR, LLC,
a California limited liability company;
and PROMARK PRODUCTIONS,
LLC, a California limited liability
company,

                              Plaintiffs,

        vs.

MACY'S, INC, a Delaware
corporation; WHIRLPOOL
CORPORATION, a Delaware
corporation; LEC MEDIA, LLC,
an Illinois limited liability company;
EXECUTIVE PROGRAM
SERVICES, INC., a Washington
corporation; JACK O'DONNELL,
an individual; SCOTT DUMMLER,
an individual; DEVIN ALEXANDER,
INC, a California corporation; DEVIN
ALEXANDER, a.k.a. RENEE
SIMONE, an individual; and DOES
1–10, inclusive,

                              Defendants.

CASE NO. 13-CV-2714 JLS (KSC)

**ORDER: (1) GRANTING
DEFENDANT MACY'S, INC.'S
REQUEST FOR JUDICIAL
NOTICE; AND (2) GRANTING IN
PART AND DENYING IN PART
DEFENDANT MACY'S, INC.'S
MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(b)(6)**

(ECF No. 19)

- 1 -

13cv2714

1    Presently before the Court is Defendant Macy's, Inc.'s ("Macy's") Motion to

2  Dismiss ("MTD") Plaintiffs Celebrity Chefs Tour, LLC ("CCT") and Promark

3  Productions, LLC's ("Promark," and, collectively, "Plaintiffs") Complaint Pursuant to

4  Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 19.)  Also before the Court are

5  Macy's Request for Judicial Notice ("RJN") (ECF No. 19-2), Plaintiffs' RJN (ECF No.

6  36),[1] and Plaintiffs' Response in Opposition to (ECF No. 39) and Macy's Reply in

7  Support of (ECF No. 42) the Motion.  The hearing for the Motion was vacated and the

8  matter taken under submission without oral argument pursuant to Civil Local Rule

9  7.1.d.1.  (ECF No. 54.)  Having considered the parties' arguments and the law, the

10  Court **GRANTS** Macy's RJN and **GRANTS IN PART AND DENIES IN PART**

11  Macy's MTD.

12                                    **BACKGROUND**

13    The Court thoroughly summarized the factual and procedural background of this

14  case in ruling on a related motion to dismiss, and accordingly the Court hereby

15  incorporates by reference the background as set forth therein.  (*See* Order 2–7, ECF No.

16  78.)

17                          **REQUEST FOR JUDICIAL NOTICE**

18    Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a

19  fact that is not subject to reasonable dispute because it: (1) is generally known within

20  the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

21  from sources whose accuracy cannot reasonably be questioned."  "Judicially noticed

22  facts often consist of matters of public record."  *Botelho v. U.S. Bank, N.A.*, 692 F.

23  Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan

24  Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  While "a court may take

25  judicial notice of the existence of matters of public record, such as a prior order or

26  decision," it should not take notice of "the truth of the facts cited therein."  *Marsh v.

27  Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

28

---

[1] The Court has already granted Plaintiffs' RJN.  (*See* Order 8–9, ECF No. 78.)

Macy's asks the Court to judicially notice the eleven (11) documents the Court judicially noticed in its April 25, 2014 Order.  (RJN 2–4, ECF No. 19-2; *see* Order 8–9, ECF No. 78.)  In addition, Macy's requests that the Court judicially notice the following two (2) documents: (1) State Bar of California Attorney Search for Gary Ravet; and (2) California Secretary of State Business Entity Detail for Promark Productions, LLC.  (*See* RJN 4, ECF No. 19-2.)  All of these documents are available to the public and are certified and maintained by an official office.  Their accuracy cannot therefore be reasonably disputed.  Accordingly, the Court **GRANTS** Macy's RJN as to all thirteen (13) documents.  However, the Court does not take notice of the truth of the facts asserted therein.

## MOTION TO DISMISS

### I.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.

## II.    Analysis

Plaintiffs assert the following seventeen claims: (1) breach of contract (Macy's); (2) breach of contract (Dummler, LEC, and O'Donnell); (3) breach of contract (Alexander); (4) intentional misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (5) negligent misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (6) conversion (all Defendants); (7) trademark infringement (all Defendants); (8) false designation of origin (all Defendants); (9) trademark dilution (all Defendants); (10) common law unfair competition (all Defendants); (11) unfair competition in violation of California Business and Professions Code § 17200 (all Defendants); (12) misappropriation of ideas (all Defendants); (13)

1  intentional interference with contractual relations (EPS, Dummler, LEC, Macy's,

2  O'Donnell, and Whirlpool); (14) intentional interference with prospective economic

3  advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (15) negligent

4  interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and

5  Whirlpool); (16) negligent interference with prospective economic advantage (EPS,

6  Dummler, LEC, Macy's, O'Donnell, and Whirlpool); and (17) declaratory relief (EPS,

7  LEC, Macy's, and Whirlpool).[2]  The Court addresses each in turn.[3]

8  **A.    Claim 1: Breach of Contract**

9       Macy's first argues that Promark[4] fails to allege all of the elements required for

10  a breach-of-contract claim.  "Under California law, the elements required to establish

11  actionable breach of contract are the existence and terms of the contract, plaintiff's

12  performance, defendant's breach, and damages therefrom."  *Student Loan Mktg. Ass'n*

13  *v. Hanes*, 181 F.R.D. 629, 633 (S.D. Cal. 1998) (citing *M.G. Chamberlain & Co. v.*

14  *Simpson*, 173 Cal. App. 2d 274 (1959)).

15       In its MTD, Macy's concedes that Promark alleges the existence of a contract.

16  (MTD 12, ECF No. 19-1 ("Promark alleges it entered into a contract with Macy's.").)

17   In its Reply, however, Macy's argues that the Declaration of Gary Ravet ("the Ravet

18  Declaration"), which the Court has judicially noticed, establishes that Promark was not

19  a party to any contract with Macy's.  (Reply 6, ECF No. 42; *see* Order 8–9, ECF No.

20  78.)  The Court finds it somewhat puzzling that Macy's makes this argument in light

21  of its contention, also found in its Reply, that the Court may not actually consider in

22

23       [2] Macy's does not seek to dismiss this seventeenth claim, and accordingly this Order
    does not address it.

24

25       [3] The parties address these claims in a haphazard order in their briefs, but the Court will
    address the claims in the order in which they appear in the Complaint.

26       [4] Macy's notes that CCT was not a party to the Alexander Contract.  (MTD 12 n.5, ECF

27  No. 19-1.)  Because Plaintiffs attached the Purchase Order to their Complaint, the Court may
    properly consider it in ruling on this MTD.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031,

28  1038 (9th Cir. 2010) (citations omitted).  On its face, the Purchase Order is only between
    Macy's and Promark.  Accordingly, the MTD is **GRANTED WITHOUT PREJUDICE** for
    this claim as to CCT.

deciding this MTD the "lengthy recitation of questionable remembrances with no foundation" that is the Ravet Declaration.  (Reply 3, ECF No. 42.)  As the Court has already acknowledged, it can notice the existence of the Ravet Declaration, but not the disputed facts contained therein.  (*See supra* p. 3.)  *See also Rezentes v. Sears, Roebuck & Co.*, 729 F. Supp. 2d 1197, 1206 (D. Haw. 2010) (explaining that a court may only take judicial notice of the *existence* of a prior declaration).  Accordingly, the Court disregards Macy's spurious argument—which seemingly questions the merits of Promark's claim rather than the sufficiency of the allegations, anyway—and determines that Promark sufficiently alleges the existence of a contract.  (*See, e.g.*, Compl. ¶¶ 29–37, 43–45, 66, ECF No. 1.)  Whether discovery will reveal that said contract was legitimate is, of course, a question for another day.

The Court also finds that Promark alleges performance.  (*Id.* ¶ 91.)  However, Macy's argues that the Complaint states that *Alexander* breached the *Alexander Contract*, rather than that *Macy's* breached the *Purchase Order*.  (MTD 12, ECF No. 19-1.)  Promark counters that this is a typographical error, and that it nonetheless alleges breach by stating that Macy's refused to send the third sponsorship payment and that Plaintiffs sent Macy's written notice of Macy's breach of the Purchase Order. (Pls.' Resp. in Opp'n 8, ECF No. 39 (citing Compl. ¶¶ 58, 71, ECF No. 1).)  The Court agrees with Promark that its factual allegations are sufficient to allege breach.  Further, the Court notes that, despite the typographical error, the Complaint nonetheless specifically alleges that "[a]s a direct, proximate, and legal result of the *breaches by Macy's* and Does 1 through 100, inclusive, *Plaintiffs have been damaged*."  (Compl. ¶ 93, ECF No. 1 (emphasis added).)  Accordingly, Promark has alleged each of the elements of a claim for breach of contract, and therefore the Court **DENIES** Macy's MTD for this claim as to Promark.

## B.   Claim 4: Intentional Misrepresentation

The elements of a claim for intentional misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge

1  of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable

2  reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d

3  268, 274 (Cal. 2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

4  Because a claim for misrepresentation sounds in fraud, the heightened pleading

5  standards of Federal Rule of Civil Procedure 9(b) apply.  For misrepresentation claims,

6  this standard is met when a party specifies the time, place and specific content of the

7  alleged fraudulent representation; the identity of the person engaged in the fraud; and

8  "'the circumstances indicating falseness'" or "'the manner in which [the]

9  representations were false and misleading.'" *Genna v. Digital Link Corp.*, 25 F. Supp.

10  2d 1032, 1038 (N.D. Cal. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

11  1547–48 (9th Cir. 1994)).  However, "[m]alice, intent, knowledge, and other conditions

12  of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  But, where

13  multiple defendants are accused of fraud, the claim "must inform each defendant of his

14  alleged participation in the fraud." *Rincon v. Recontrust Co.*, No. 09cv937-IEG-JMA,

15  2009 WL 2407396, at *3 (S.D. Cal. Aug 4, 2009) (quoting *DiVittorio v. Equidyne*

16  *Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).  Moreover, merely attributing

17  a misrepresentation to a corporate entity is inadequate; a specific person must be . . .

18  identified. *See Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1155 (N.D.

19  Ill. 1995).

20  Macy's argues that Plaintiffs' claim for intentional misrepresentation fails

21  because Plaintiffs do not allege with the requisite level of specificity: (1) the purported

22  false representations, (2) intent to induce reliance or actual reliance, and (3) damage.

23  (MTD 16–19, 20, ECF No. 19-1.)  Plaintiffs counter that the Complaint adequately

24  pleads Macy's fraud.  The Court agrees with Plaintiffs.  First, Plaintiffs allege that, *inter*

25  *alia*, the following statements by Macy's agents constitute false representations: that the

26  sponsorship had been approved (Compl. ¶¶ 29–32, ECF No. 1), that sponsorship

27  payments were being processed and/or were ready to be sent (*id.* ¶¶ 36, 38, 41), that

28  Macy's "hoped to make this a multi-year arrangement" (*id.* ¶ 37), that Macy's created

the "Macy's GACT" logo for its in-store promotions (*id.* ¶ 53), that Rosenthal would stay at Macy's until the Tour was finished (*id.* ¶ 54), that Macy's would make the second sponsorship payment (*id.* ¶ 59), that Macy's would sign the Purchase Order (*id.* ¶ 65), and that Macy's would make the third sponsorship payment (*id.* ¶ 73). (Pls.' Resp. in Opp'n 11, ECF No. 39.) These factual allegations are detailed and specify who said them, the date on which they were said, and whether they were said via telephone or in person (and, if in person, where).

Second, Plaintiffs allege that Macy's knew these representations were false. (Pls.' Resp. in Opp'n 11–12, ECF No. 39 (citing, *inter alia*, Compl. ¶¶ 105, 113, ECF No. 1).) Third, Plaintiffs allege Macy's intent to defraud or induce reliance. (*Id.* at 12 (citing, *inter alia*, Compl. ¶¶ 106, 113, ECF No. 1).) Contrary to Macy's arguments, knowledge and intent may be pled generally. *See* Fed. R. Civ. P. 9(b).

Fourth, Plaintiffs allege justifiable reliance by stating, *inter alia*, that: Macy's requested that Plaintiffs send it the Purchase Order and various invoices (Compl. ¶¶ 34–35, ECF No. 1), Macy's assured Plaintiffs that it would make its sponsorship payments (*id.* ¶¶ 36, 41, 59, 73), and Macy's told Plaintiffs that it would sign the Purchase Order (*id.* ¶¶ 38, 73). (Pls.' Resp. in Opp'n 12, ECF No. 39.) Given these allegations, Plaintiffs' reliance seems objectively justifiable. Finally, Plaintiffs allege resulting damage. (*Id.* (citing Compl. ¶¶ 75, 109, 115, ECF No. 1).) Macy's appears to have caused Plaintiffs' harm, as Macy's failure to make its sponsorship payments forced Plaintiffs to suspend the Tour and the editing of the footage prior to completion. As a whole, the Complaint satisfactorily gives Macy's notice of its purported fraud and makes out a prima facie claim for intentional misrepresentation. Accordingly, the Court finds that these allegations are sufficient to survive Macy's MTD and **DENIES** Macy's MTD as to this claim.

## C.   *Claim 5: Negligent Misrepresentation*

To allege a claim for negligent misrepresentation, a plaintiff must plead: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for

believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011) (citation and internal quotation marks omitted).   Moreover, under California law, "[t]he existence of a duty of care is necessary to support a negligent misrepresentation claim." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) (citations omitted).

Macy's makes the same arguments against this claim as against Plaintiffs' intentional misrepresentation claim.  (*See* MTD 16–19, 20, ECF No. 19-1.)  For the reasons provided above, the Court believes that Plaintiffs have adequately pleaded the five elements of a claim for negligent misrepresentation, including Macy's agents' lack of reasonable grounds for believing their statements to be true. (*See* Compl. ¶ 113, ECF No. 1.)  However, Macy's also argues that Plaintiffs' claim must fail because Plaintiffs do not allege that Macy's owed them a duty of care.  (MTD 19, ECF No. 19-1.)  The Court agrees that, on its face, the Complaint fails to allege that Macy's owed Plaintiffs a duty of care.   Accordingly, the Court **GRANTS** Macy's MTD as to this claim. However, because a duty of care can derive from a contract, such dismissal is **WITHOUT PREJUDICE**.  *See, e.g.*, *J'Aire Corp. v. Gregory*, 598 P.2d 60, 62 (Cal. 1979) ("A duty of care may arise through statute or by contract."); *Eads v. Marks*, 249 P.2d 257, 261 (Cal. 1952) ("[T]he agreement between plaintiffs and defendant created a duty of care.").

## C.    Claim 6: Conversion

Macy's next argues that Plaintiffs' conversion claim fails because Plaintiffs do not allege "that Macy's took ownership of Plaintiff's property by a wrongful act," as Plaintiffs voluntarily gave the CCT Assets to LEC. (MTD 24, ECF No. 19-1.) Macy's claims that, as an "innocent receiver" of the CCT Assets, it cannot be held liable for conversion. (*Id.*)  Plaintiffs argue that they properly allege conversion because "[a]n action for conversion lies not only in the taking of another's property, but also in the

wrongful use of that property." (Pls.' Resp. in Opp'n 15, ECF No. 39.) The Court agrees with Plaintiffs.

The elements of a claim for conversion consist of (1) ownership or a right to possession, (2) wrongful disposition of the property, and (3) damages. *G. S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Moreover, § 229 of the Restatement (Second) of Torts provides:

> One who receives possession of a chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel.

California Courts have cited approvingly to § 229. *See, e.g.*, *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 157 n.4 (1990); *Strutt v. Ontario Sav. & Loan Ass'n*, 28 Cal. App. 3d 866, 874–75 (1972).

First, Plaintiffs repeatedly assert their ownership of the GACT copyright, trademark, and content. (Compl. ¶¶ 14–16, 28, 48, 118, ECF No. 1.) While Plaintiffs purportedly "consented to LEC holding the CCT Assets temporarily until it could be determined where they should be sent," Plaintiffs have since requested the return of the CCT Assets. (*Id.* ¶¶ 75, 77.) Thus, Plaintiffs had a right to immediate possession of the CCT Assets, including the Tour footage.

Second, Plaintiffs allege that Macy's created and used, without Plaintiffs' permission, a "Macy's GACT" logo, and that Macy's released a press release that "quoted verbatim the copyrighted text describing the TV Show that was written by [Plaintiffs]." (*Id.* ¶¶ 53, 60, 76, 80.) Further, despite Plaintiffs' requests, the CCT Assets have not been returned. (*Id.* ¶ 77.) Rather, Plaintiffs claim that Macy's has released GACT footage to public broadcast stations under the "Macy's GACT" name, purporting to be the owner and producer of Plaintiffs' content. (*Id.* ¶¶ 80, 85.) Although LEC had possession of the CCT Assets, it lacked the authority to transfer them. And Macy's appears to have acquired the Tour footage from LEC with the intent to make the footage its own. That Macy's may not have ever possessed the physical

1    tapes is of no consequence, as it gained possession and claimed ownership of the
2    intellectual property contained therein.[5]

3        Macy's also contends, however, that the claim must be dismissed because
4    Plaintiffs improperly seek compensatory damages rather than the damages for
5    conversion mandated by California Civil Code § 3336.  (MTD 24–25, ECF No. 19-1.)
6    However, Plaintiffs allege that they "ha[ve] been damaged" by their loss of the CCT
7    Assets and their inability to distribute GACT themselves.  (Compl. ¶¶ 102, 122, ECF
8    No. 1.)  This is all that is required on a motion to dismiss.  *See Summit Tech., Inc. v.*
9    *High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D. Cal. July 16, 1996)
10   (citation, alteration, and internal quotation marks omitted) ("[A] Rule 12(b)(6) motion
11   will not be granted merely because a plaintiff requests a remedy to which he or she is
12   not entitled.")  Accordingly, Plaintiffs have stated a prima facie claim for conversion,
13   and the Court **DENIES** Macy's MTD as to this claim.

14   ***D.    Claims 7 & 8: Trademark Infringement and False Designation of Origin***

15       To state a claim for federal trademark infringement under the Lanham Act, a
16   plaintiff must show: "'(1) that it has a protectible ownership interest in the mark; and
17   (2) that the defendant's use of the mark is likely to cause consumer confusion.'"
18   *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th
19   Cir. 2011) (citation omitted).  A claim for false designation of origin is subject to "[t]he
20   same standard," except a claim for false designation of origin does not require that the
21   mark be registered.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d
22   1036, 1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. §§ 1114(1) (trademark infringement),
23   1125(a)(1) (false designation of origin)).  Thus, the Court analyzes these claims jointly.

24       As to the first element, Macy's argues that judicially noticeable records establish

25

26   _____

27       [5] "In short, California does not follow the *Restatement*'s strict requirement that some
     document must actually represent the owner's intangible property right.  On the contrary,
28   courts routinely apply the tort [of conversion] to intangibles without inquiring whether they
     are merged in a document."  *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2002)
     (explaining that California jurisprudence "recognizes conversion of music recordings, radio
     shows, customer lists, regulatory filings, confidential information and even domain names").

that only CCT owns the GACT trademark.  (MTD 26 n.6, ECF No. 19-1.)  Macy's, however, is mistaken.  The public records at issue are dated June 2011 through May 2012.  Thus, it is possible that CCT assigned the GACT mark to Promark sometime after May 22, 2012 but prior to or during the acts comprising Plaintiffs' allegations. Thus, the Court declines at this time to dismiss the trademark claims against Promark on this basis.  Plaintiffs allege ownership of the mark as to both CCT *and* Promark, and thus Plaintiffs have sufficiently alleged the first element of their trademark infringement claim.  (*See* Compl. ¶¶ 16, 125, ECF No. 1.)

As to the second element, Macy's argues that Plaintiffs fail to allege "that Macy's is using a trademark, let alone using CCT's trademark or a colorable imitation of CCT's mark on goods in commerce without CCT's consent or that such use is likely to cause confusion, mistake or deceive the public."  (MTD 26, ECF No. 19-1.)  The Court disagrees.  When evaluating likelihood of confusion on a motion to dismiss, "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed."  *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981)).  But, while likelihood of confusion *is capable* of being decided as a matter of law, "[w]hether confusion is likely is a factual determination woven into the law" that courts "routinely treat . . . as [an issue] of fact" best left for determination by a jury.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356, 1356 n.5 (9th Cir. 1985).

It does not appear as a matter of law that consumer confusion is unlikely. Plaintiffs allege that "Defendants have used and are using [Plaintiffs'] registered mark." (Compl. ¶ 126, ECF No. 1.)  Plaintiffs claim that Defendants are using the mark in commerce, "in connection with the distribution[] and/or advertising of a television show."  (*Id.*)  More specifically, Plaintiffs allege that Macy's created and used, without Plaintiffs' permission, the "Macy's GACT" logo, and that Macy's has released GACT footage to public broadcast stations and the public under this name while purporting to

be the owner and producer of the content.  (*Id.* ¶¶ 53, 60, 76, 80, 85.)  Confusion seems particularly likely given that the goods are so similar—indeed, Plaintiffs claim that Defendants are really marketing Plaintiffs' television show as Defendants' own.  (*Id.* ¶¶ 79–87.)  Accordingly, the Court finds that Plaintiffs have satisfactorily alleged federal trademark infringement and false designation of origin claims and accordingly **DENIES** Macy's MTD as to these claims.

### E.    Claim 9: Trademark Dilution

To plead a claim for federal trademark dilution, a plaintiff must show that it owns a famous and distinctive trademark, that the defendant began using the mark in commerce after the mark became famous, and that the defendant's use of the mark is likely to cause dilution by blurring or tarnishment.  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089–90 (9th Cir. 2010) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007)); *see also* 15 U.S.C. § 1125(c).

The parties disagree as to whether Plaintiffs adequately allege a famous mark.  "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  In determining whether a mark is famous, a court may consider "all relevant factors," including: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered.  *Id.* § 1125(c)(2)(A)(i)–(iv).  Macy's urges that Plaintiffs do not allege that a large percentage of the general consuming public recognizes the GACT mark, only that it was presented to several television stations in 2011 and at a public television industry event.  (MTD 29, ECF No. 19-1.)  Plaintiffs counter that Macy's arguments go to the merits of the case rather than the sufficiency of the Complaint.  (Pls.' Resp. in Opp'n 18, ECF No. 39.)  The Court, however, agrees with Macy's.

The Court notes that the GACT mark is federally registered, and thus the fourth

factor favors a finding of fame.  However, Plaintiffs make no allegations about any advertising and publicity efforts; Plaintiffs apparently made no sales of any GACT content; and Plaintiffs fail to allege any facts concerning *wide-reaching* access to, much less recognition of, their mark.  Plaintiffs allege that their mark was well-received by television stations and had a "substantial presence" at the APT Fall Marketplace, which appears to have been attended primarily by persons in the entertainment industry. (Compl. ¶ 138, ECF No. 1.)  Plaintiffs also argue that the show was filmed over the course of ten live events in several major cities.  (*Id.*)  However, these allegations fall short of "wide recognition," and at most suggest that the mark might be famous in the insufficient "niche" market of the entertainment industry.  *See Planet Coffee Roasters, Inc. v. Dam*, No. SACV 09-00571-MLG, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12, 2009) (citations omitted).  Thus, even applying the relatively lax standard governing Rule 12(b)(6) motions, the Court finds that Plaintiffs' conclusory allegations of fame are fatally defective to stating a "facial[ly] plausib[le]" claim for trademark dilution. *See Iqbal*, 556 U.S. at 678.   Accordingly, the Court **GRANTS WITHOUT PREJUDICE** Macy's MTD as to this claim.

## F.      Claim 10: Common Law Unfair Competition

"'The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another . . . [, or] acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997), *not followed on other grounds by McKendall v. Crown Control Corp.*, 122 F.3d 803 (1997) (alteration in original) (quoting *Bank of the W. v. Superior Court*, 2 Cal 4th 1254, 1263 (1992)); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008).  "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Bank of the W.*, 2 Cal 4th at 1263 (citation omitted).  "The decisive test of common law unfair

1   competition is whether the public is likely to be deceived about the source of goods or

2   services by the defendant's conduct.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810

3   F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) (citations omitted).

4        Macy's argues that Plaintiffs' claim of common law unfair competition must be

5   dismissed because Plaintiffs hold a valid, registered trademark.  (*See* MTD 21, ECF No.

6   19-1; Reply 8, ECF No. 42.)  However, courts have routinely entertained claims for

7   both trademark infringement and common law unfair competition, implying that the two

8   causes of action are not mutually exclusive, particularly at the pleading stage.  *See, e.g.*,

9   *Hokto Kinoko*, 810 F. Supp. 2d 1013; *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.

10  Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[T]he Ninth Circuit 'has consistently held that

11  state common law claims of unfair competition and actions pursuant to California

12  Business and Professions Code § 17200 are "substantially congruent" to claims under

13  the Lanham Act.' . . .  Therefore, the Court jointly analyzes Plaintiff's trademark

14  infringement, false designation of origin, state statutory unfair competition, and state

15  common law unfair competition claims."); *Moroccanoil, Inc. v. Allstate Beauty Prods.*,

16  *Inc.*, 847 F. Supp. 2d 1197 (C.D. Cal. 2012); *Vallavista Corp. v. Amazon.com, Inc.*, 657

17  F. Supp. 2d 1132 (N.D. Cal. 2008); *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233 (E.D.

18  Cal. 2007); *Area 55, Inc. v. Pandamerican LLC*, No. 10-CV-269-H (NLS), 2010 WL

19  3564715 (S.D. Cal. Sept. 10, 2010);  *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal.

20  App. 4th 426 (1997).  Thus, the Court does not believe that Plaintiffs' common law

21  unfair competition claim is precluded as a matter of law.  Moreover, because the Court

22  has already determined that Plaintiffs have plausibly alleged possible consumer

23  confusion (*see supra* p. 12), the Court **DENIES** Macy's MTD as to this claim.

24  **G.    Claim 11: Violation of California Business and Professions Code § 17200**

25       California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair

26  or fraudulent business act or practice and unfair, deceptive, untrue or misleading

27  advertising."  Cal. Bus. & Prof. Code § 17200.

28       Plaintiffs argue that, because Macy's actions constitute business practices, and

because those acts "form the basis of several other claims for relief" in the Complaint, they have satisfactorily alleged unlawful business activities. (Pls.' Resp. in Opp'n 13–14, ECF No. 39.) The Court agrees. "An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985) (internal quotation marks omitted) (quoting *People v. McKale*, 25 Cal. 3d 626, 631–32 (1979)). The act of promoting a television show as one's own is certainly a business practice, and because the Court has found that Plaintiffs have plausibly alleged several violations of law, those violations can serve as predicate unlawful business activities under the UCL. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (internal quotation marks and citations omitted) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.").

Plaintiffs also claim to have pleaded unfair business practices by "alleg[ing] that [Plaintiffs] invented, developed, and shot a television show, and that Defendants took that television show (including both the concept and the raw footage), made a very slight change to its name and then began airing Plaintiff's [*sic*] footage as a competing television show." (Pls.' Resp. in Opp'n 13, ECF No. 39.) Plaintiffs claim that this is a question of fact best left to the jury. (*Id.*) Macy's, however, argues that Plaintiffs' "subjective characterizations of what is 'unfair'" fail to address unfairness as it pertains to the UCL. (MTD 21–22, ECF No. 19-1.) The Court agrees with Macy's. Under the UCL, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544. Plaintiffs' allegations, if true, allege unfair acts in a more generalized moral sense. *See F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (explaining that "a practice that is neither in violation of the antitrust laws nor deceptive [can] nonetheless [be] unfair"

if it is "immoral, unethical, oppressive, or unscrupulous").  However, Plaintiffs'
allegations fail to allege acts that more narrowly violate the spirit of the antitrust laws,
such as horizontal price fixing, exclusive dealing, or monopolization.  *See* Holmes &
Mangiaracina, Antitrust Law Handbook § 7:2.  Accordingly, Plaintiffs do not allege
unfair business practices within the meaning of the UCL.

Finally, Plaintiffs argue that Macy's has engaged in fraudulent business practices
by promoting the show under a confusingly similar name.  (Pls.' Resp. in Opp'n 14,
ECF No. 39.)  Plaintiffs claim that "chefs are likely to be confused [as to] which show
they are agreeing to be a part of, sponsors are likely to be confused [as to] whose show
they are sponsoring, and viewers are likely to be confused as to whose show they are
watching."  (*Id.*)  The Court agrees.  "The fraud prong of the UCL is unlike common
law fraud or deception.  A violation can be shown even if no one was actually deceived[
or] relied upon the fraudulent practice. . . .  Instead, it is only necessary to show that
members of the public are likely to be deceived."  *Schnall v. Hertz Corp.*, 78 Cal. App.
4th 1144, 1167 (2000) (internal quotation marks, citations, and alteration omitted).
Accepting Plaintiffs' allegations as true, Defendants are actively trying to deceive the
public into believing that Plaintiffs' show is their own.  And, the Court has found that
Plaintiffs have plausibly alleged possible consumer confusion.  (*See supra* p. 12.)
Accordingly, Plaintiffs have pleaded with adequate specificity that Macy's engaged in
unlawful and fraudulent acts plausibly violating the UCL, and thus the Court **DENIES**
Macy's MTD as to this claim.[6]

## H.   Claim 12: Misappropriation of Ideas

The Court finds that Plaintiffs' twelfth claim is preempted by the Copyright Act
of 1976 ("the Act").  "Preemption occurs when (1) the work at issue comes within the
subject matter of copyright and (2) the rights granted under state law are 'equivalent to

---

[6] Contrary to Macy's arguments (*see* MTD 23, ECF No. 19-1; Reply 9, ECF No. 42),
the Court has already explained with regards to Plaintiffs' claim for conversion that "a Rule
12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he
or she is not entitled." *Summit Tech.*, 933 F. Supp. at 927–28 (citation, alteration, and internal
quotation marks omitted).

any of the exclusive rights within the general scope of copyright' set forth in the Act." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000) (quoting *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)).

First, because Plaintiffs' ideas have been affixed in a tangible, copyrighted work—the GACT footage—Plaintiffs' twelfth claim falls within the scope of federal copyright law. *See id.* at 1057–59. Second, the rights afforded by the Act are equivalent because Plaintiffs "allege an implied-in-fact contract not to use [their] ideas and concepts . . . without compensating [them]," rather than a contract that "protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution, or display." *Id.* at 1062, 1060–61 (citation omitted). Accordingly, Plaintiffs' twelfth claim is preempted, and therefore this Court **GRANTS WITH PREJUDICE** Macy's MTD as to this claim.

## I. *Claim 13: Intentional Interference with Contractual Relations*

According to the Supreme Court of California,

> "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."

*Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The third element incorporates a requirement that the defendant's "alleged wrongful or unjustified conduct caused the breach." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).

Macy's argues that Plaintiffs' general allegations "fail to provide any specifics about: (1) the various contracts or the terms thereof; (2) the identity of the defendant that allegedly interfered with which contract; (3) whether there was an actual breach of any contract . . . [;] and (4) the intentional act that was independently wrongful." (MTD 14, ECF No. 19-1.) Macy's further suggests that Plaintiffs cannot allege damages at all, much less that Macy's actions *caused* any damages, because "the television series at

issue was going to air on PBS and it is nearly axiomatic that PBS does not pay for content." (*Id.*)  Plaintiffs, on the other hand, claim to have adequately pleaded all five elements.  (Pls.' Resp. in Opp'n 9, ECF No. 39.)

The Court finds that Plaintiffs have failed to sufficiently plead the third element of the tort.  In paragraph 162 of the Complaint, Plaintiffs claim to allege intentional acts on Macy's part designed to induce third parties to breach their contracts with Plaintiffs: "Despite knowing of these contracts and existing business relationships, said Defendants, and each of them, intentionally interfered with those contracts and business relationships." (Pls.' Resp. in Opp'n 9, ECF No. 39.)  Neither this statement nor any other part of the Complaint, however, identifies what acts Macy's purportedly undertook to induce third parties to breach their contracts with Plaintiffs, or why Macy's, rather than other forces, was the cause of said breach(es).  For instance, LEC purportedly breached its contract with Plaintiffs by, among other things, refusing to turn over the CCT Assets to Plaintiffs.  (*See* Compl. ¶ 95, ECF No. 1.)  However, the Complaint in no way suggests that Macy's urged LEC to hang on to the CCT Assets. On the face of the Complaint, it is just as possible that LEC decided on its own to refuse to return the CCT Assets.  Thus, Plaintiffs fail to allege either Macy's intentional acts or causation.  Accordingly, Plaintiffs fail to state a plausible claim for intentional interference with contractual relations, and thus the Court **GRANTS WITHOUT PREJUDICE** Macy's MTD as to this claim.

**J.    Claims 14 and 16: Intentional and Negligent Interference with Prospective Economic Advantage**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Youst v. Longo*, 729 P.2d 728, 733 n.6 (1987) (citing *Buckaloo v. Johnson*, 14 Cal. 3d

815, 827 (1975)).  Similarly, a plaintiff pleads a claim for negligent interference with prospective economic advantage if he alleges:

> (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware of should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997) (citations omitted).

"However, as a matter of law, a threshold causation requirement exists for maintaining a cause of action for either tort, namely, proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference." *Id.* (emphasis in original).  But the Court has already found, with regards to Plaintiffs' thirteenth claim, that Plaintiffs fail to establish that Macy's *caused* Plaintiffs' harm. (*See supra* p. 19.)  Additionally, as to the intentional form of the tort, the Court has determined that Plaintiffs fail to allege Macy's intentional acts designed to disrupt the relationship (*see id.*), and as to the negligent form of the tort, the Court has determined that Plaintiffs fail to allege that Macy's owed them a duty of care (*see supra* p. 9).  Accordingly, Plaintiffs fail to state claims for interference with prospective economic advantage, and therefore the Court **GRANTS WITHOUT PREJUDICE** Macy's MTD as to both claims.

## K.    Claim 15: Negligent Interference with Contractual Relations

Finally, Macy's argues that this claim must be dismissed because California does not recognize the tort of negligent interference with contractual relations. (MTD 12–13, ECF No. 19-1.)  The Court agrees, and accordingly **GRANTS WITH PREJUDICE** Macy's MTD as to this claim. *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636–37 (1960) (explaining that California courts "have quite consistently refused to recognize

a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties," and refusing to recognize said cause of action because "to so hold would constitute an unwarranted extension of liability for negligence"); *see also Express Diagnostics Int'l, Inc. v. Tydings*, No. C 06-01346 JW, 2009 WL 111736, at *7 n.14 (N.D. Cal. Jan. 15, 2009) (citation omitted) ("[T]he Supreme Court [of California] has yet to disapprove *Fifield*.").

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Macy's Request for Judicial Notice and **GRANTS IN PART AND DENIES IN PART** Macy's Motion to Dismiss.

The Court **GRANTS** Macy's Motion to Dismiss **WITHOUT PREJUDICE** as to claims 1 (CCT), 5, 9, 13, 14, and 16.  The Court **GRANTS** Macy's Motion to Dismiss **WITH PREJUDICE** as to claims 12 and 15, as amendment of these claims would be futile.  *See DeSoto*, 957 F.2d at 658.  The Court **DENIES** Macy's Motion to Dismiss as to claims 1 (Promark), 4, 6, 7, 8, 10, and 11.

If Plaintiffs wish, they **SHALL FILE** an amended complaint within fourteen (14) days of the date on which this Order is electronically docketed.  *Failure to file an amended complaint by this date may result in dismissal of Plaintiffs' claims against Macy's with prejudice.*

**IT IS SO ORDERED**.

DATED:  April 25, 2014

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

- 21 -

13cv2714