1
2
3
4
5
6
7
8

9                   **UNITED STATES DISTRICT COURT**

10                 **SOUTHERN DISTRICT OF CALIFORNIA**

11   CELEBRITY CHEFS TOUR, LLC,              CASE NO. 13-CV-2714 JLS (KSC)
     a California limited liability company;
12   and PROMARK PRODUCTIONS,               **ORDER: (1) GRANTING**
     LLC, a California limited liability     **DEFENDANTS SCOTT**
13   company,                                **DUMMLER AND JACK**
                                             **O'DONNELL'S REQUESTS**
14                            Plaintiffs,    **FOR JUDICIAL NOTICE AND**
                                             **OVERRULING PLAINTIFFS'**
15                                           **OBJECTION THERETO; AND**
                                             **(2) GRANTING IN PART AND**
16        vs.                                **DENYING IN PART**
                                             **DEFENDANTS SCOTT**
17                                           **DUMMLER AND JACK**
                                             **O'DONNELL'S MOTIONS TO**
18                                           **DISMISS PURSUANT TO**
                                             **FEDERAL RULE OF CIVIL**
19                                           **PROCEDURE 12(b)(6)**

20   MACY'S, INC, a Delaware                 (ECF Nos. 65, 68, 75-1)
     corporation; WHIRLPOOL
21   CORPORATION, a Delaware
     corporation; LEC MEDIA, LLC,
22   an Illinois limited liability company;
     EXECUTIVE PROGRAM
23   SERVICES, INC., a Washington
     corporation; JACK O'DONNELL,
24   an individual; SCOTT DUMMLER,
     an individual; DEVIN ALEXANDER,
25   INC, a California corporation; DEVIN
     ALEXANDER, a.k.a. RENEE
26   SIMONE, an individual; and DOES
     1–10, inclusive,
27
                            Defendants.
28

13cv2714

1    Presently before the Court are Defendants Scott Dummler ("Dummler") and Jack
2    O'Donnell's ("O'Donnell," and, collectively, "Defendants") Motions to Dismiss
3    ("MTD") Pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 65, 68.)
4    Also before the Court are Plaintiffs Celebrity Chefs Tour, LLC ("CCT") and Promark
5    Productions, LLC's ("Promark," and, collectively, "Plaintiffs") Responses in
6    Opposition to (ECF Nos. 69, 70) and Defendants' Omnibus Reply in Support of (ECF
7    No. 75-3) the MTDs, as well as Defendants' Requests for Judicial Notice ("RJN") (ECF
8    Nos. 65-2, 68-2, 75-1), Plaintiffs' Objection thereto (ECF No. 73), and Defendants'
9    Response to Plaintiffs' Objection (ECF No. 75-5).  The Court vacated the hearings on
10   Defendants' MTDs and took the matters under submission without oral argument
11   pursuant to Civil Local Rule 7.1.d.1.  (ECF No. 74.)  Having considered the parties'
12   arguments and the law, the Court **GRANTS** Defendants' RJNs and **GRANTS IN**
13   **PART AND DENIES IN PART** Defendants' MTDs.

### BACKGROUND

15   The Court thoroughly summarized the factual and procedural background of this
16   case in ruling on a related motion to dismiss, and accordingly the Court hereby
17   incorporates by reference the background as set forth therein.  (*See* Order 2–7, ECF No.
18   78.)

### REQUESTS FOR JUDICIAL NOTICE

20   Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a
21   fact that is not subject to reasonable dispute because it: (1) is generally known within
22   the trial court's territorial jurisdiction; or (2) can be accurately and readily determined
23   from sources whose accuracy cannot reasonably be questioned."  "Judicially noticed
24   facts often consist of matters of public record."  *Botelho v. U.S. Bank, N.A.*, 692 F.
25   Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan*
26   *Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  While "a court may take
27   judicial notice of the existence of matters of public record, such as a prior order or
28   decision," it should not take notice of "the truth of the facts cited therein."  *Marsh v.*

1    *Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

2         Defendants first ask the Court to judicially notice five (5) documents.  (*See* ECF

3    Nos. 65-2, 68-2.)  Defendants ask the Court to take notice of the Declaration of Scott

4    Dummler ("the Dummler Declaration") in Opposition to Plaintiffs' *Ex Parte* Motion for

5    Temporary Restraining Order, filed on November 27, 2012 in the action *Celebrity Chefs*

6    *Tour LLC v. LEC Media, LLC, et al.*, Case No. 37-2012-00085275-CU-BC-CTL,

7    Superior Court of the State of California, County of San Diego.  Defendants also ask

8    the Court to judicially notice the following four (4) documents, all filed with the United

9    States Patent and Trademark Office: (1) Trademark/Service Mark Application for

10   "Great American Chefs Tour," Serial No. 85284912, filed on April 4, 2011; (2) Office

11   Action regarding Trademark Application Serial No. 85284912; (3) Response to Office

12   Action regarding Trademark Application Serial No. 85284912; and (4) Trademark

13   Registration No. 4,145,234, registered May 22, 2012.

14        In addition, Defendants ask the Court to judicially notice the following five (5)

15   documents, all from the action *Celebrity Chefs Tour LLC v. LEC Media, LLC, et al.*,

16   Case No. 37-2012-00085275-CU-BC-CTL, Superior Court of the State of California,

17   County of San Diego: (1) Plaintiff's Complaint, filed on November 13, 2012; (2)

18   Plaintiff's First Amended Complaint (Verified), filed on January 8, 2013; (3) Jack

19   O'Donnell's and Scott Dummler's Memorandum of Points and Authorities in Support

20   of Demurrer to Plaintiff's First Amended Complaint (Verified), filed on March 29,

21   2013; (4) LEC Media, LLC's Memorandum of Points and Authorities in Support of

22   Demurrer to Plaintiff's First Amended Complaint (Verified), filed on March 29, 2013;

23   and (5) Register of Actions Docket.  (ECF No. 75-1.)

24        Plaintiffs argue that the request to judicially notice the Dummler Declaration "is

25   not necessary nor proper."  (Obj. to RJN 2, ECF No. 73.)  Yet, this is incorrect.

26   Normally, declarations filed in the same or prior cases are matters of public record

27   potentially subject to judicial notice.  *See, e.g.*, *Harris v. Cnty. of Orange*, 682 F.3d

28   1126, 1132 (9th Cir. 2012); *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1061

1   (E.D. Cal. 2011); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1117 (C.D.
2   Cal. 2010).  Unless the facts therein are generally known or undisputed, however, a
3   court may usually only judicially notice the fact that the declaration exists, that it was
4   filed, and the date on which it was filed, not the contents of the declaration.  *See*
5   *Stamas*, 795 F. Supp. 2d at 1061; *Hicks v. Evans*, No. C 08-1146 SI (pr), 2012 WL
6   398821, at *4 (N.D. Cal. Feb. 7, 2012).

7        Nevertheless, a court ruling on a motion to dismiss brought pursuant to Federal
8   Rule of Civil Procedure 12(b)(6) may consider "documents attached to the complaint,
9   documents incorporated by reference in the complaint, or matters of judicial
10  notice—without converting the motion to dismiss into a motion for summary
11  judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations
12  omitted); *see* Fed. R. Civ. P. 12(d).  "The defendant may offer such a document, and the
13  district court may treat such a document as part of the complaint, and thus may assume
14  that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)," so
15  long as the complaint alleges the document's contents and no party questions the
16  document's authenticity.  *Id.*; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir 1994),
17  *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th
18  Cir. 2002).

19       Far from disputing the Dummler Declaration's authenticity, in their Complaint,
20  Plaintiffs recite for their truth ten admissions from the Dummler Declaration concerning
21  the ownership of the CCT Assets.  (*See* Comp. ¶ 78, ECF No. 1.)  Thus, not only is the
22  Dummler Declaration properly judicially noticed, but, under Federal Rule of Civil
23  Procedure 12(d), it is also incorporated by reference into the Complaint, and therefore
24  the Court may consider the substance of the Dummler Declaration in ruling on this
25  MTD.  Accordingly, the Court **OVERRULES** Plaintiffs' Objection to Defendants'
26  RJNs.

27       Further, all of the remaining documents are available to the public and are
28  certified and maintained by an official office.  Their accuracy cannot therefore be

reasonably disputed.  Accordingly, the Court **GRANTS** Defendants' RJNs as to all ten (10) documents.  However, given that some of the facts in these documents may be subject to reasonable dispute, the Court does not take notice of the truth of the facts asserted therein—with the exception, of course, of the Dummler Declaration.

## MOTION TO DISMISS

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to

13cv2714

1   relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as
2   true "legal conclusions" contained in the complaint. *Id.* This review requires context-
3   specific analysis involving the Court's "judicial experience and common sense." *Id.* at
4   679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer
5   more than the mere possibility of misconduct, the complaint has alleged—but it has not
6   'show[n]'—'that the pleader is entitled to relief.'" *Id.*

7          Where a motion to dismiss is granted, "leave to amend should be granted 'unless
8   the court determines that the allegation of other facts consistent with the challenged
9   pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*,
10  957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*
11  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to
12  amend would be futile, the Court may deny leave to amend.

13  **II.    Analysis**

14         Plaintiffs assert the following seventeen claims: (1) breach of contract (Macy's);
15  (2) breach of contract (Dummler, LEC, and O'Donnell); (3) breach of contract
16  (Alexander); (4) intentional misrepresentation (Alexander, DAI, Dummler, LEC,
17  Macy's, and O'Donnell); (5) negligent misrepresentation (Alexander, DAI, Dummler,
18  LEC, Macy's, and O'Donnell); (6) conversion (all Defendants); (7) trademark
19  infringement (all Defendants); (8) false designation of origin (all Defendants); (9)
20  trademark dilution (all Defendants); (10) common law unfair competition (all
21  Defendants); (11) unfair competition in violation of California Business and Professions
22  Code § 17200 (all Defendants); (12) misappropriation of ideas (all Defendants); (13)
23  intentional interference with contractual relations (EPS, Dummler, LEC, Macy's,
24  O'Donnell, and Whirlpool); (14) intentional interference with prospective economic
25  advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (15) negligent
26  interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and
27  Whirlpool); (16) negligent interference with prospective economic advantage (EPS,
28  Dummler, LEC, Macy's, O'Donnell, and Whirlpool); and (17) declaratory relief (EPS,

LEC, Macy's, and Whirlpool).[1]

## A.    Alter Ego Liability

As an initial matter, Dummler and O'Donnell contend that all of Plaintiffs' claims against them rely solely on a factually unsupported invocation of the alter ego doctrine. (Dummler MTD 10–12, ECF No. 65-1; O'Donnell MTD 10–12, ECF No. 68-1.) Plaintiffs claim to have sufficiently pleaded an alter ego theory of liability as to both Dummler and O'Donnell.[2]  (Opp'n to Dummler MTD 12–15, ECF No. 69; Opp'n to O'Donnell MTD 12–15, ECF No. 70.)  The Court, however, agrees with Defendants that Plaintiffs' alter ego theory of liability fails.

Generally, a member or manager of an LLC—such as LEC Media, LLC ("LEC")—cannot be held liable for the "debts, obligations, or other liabilities" of the LLC, "whether arising in contract, tort, or otherwise," solely by reason of his status as a member or manager. Cal. Corp. Code § 17703.04(a); *see Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000) ("Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." (citations omitted)). Plaintiffs allege that Dummler and O'Donnell were each "an officer, managing agent, owner, proprietor, or otherwise executive in charge of production for LEC" at the relevant points in time.  (Compl. ¶¶ 7–8, ECF No. 1.)

Nevertheless, an LLC member may become liable for the LLC's obligations under California's common law alter ego doctrine.  Cal. Corp. Code § 17703.04(b). Alter ego liability permits a plaintiff to "pierce the corporate veil" "where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable

---

[1] Defendants do not seek to dismiss this seventeenth claim, and accordingly this Order does not address it.

[2] Plaintiffs concede in their Oppositions that many of their claims against Defendants are premised on the alter ego doctrine.  It appears that Plaintiffs' breach of contract, conversion (as to O'Donnell), trademark infringement, false designation of origin, trademark dilution, and common law unfair competition claims are premised solely on alter ego liability.  (*See generally* Opp'ns, ECF Nos. 69, 70.)

for the actions of the corporation." *Sonora Diamond*, 83 Cal. App. 4th at 538 (citation omitted).  Under California law, two requirements must be met to invoke the alter ego doctrine: (1) that there be such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.  *See Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985) (en banc).

In assessing unity of interest, some of the factors that courts consider include: (a) the sole ownership of all the stock in a corporation by one individual or members of a family; (b) the use of the same office location and employment of the same employees; (c) the undercapitalization of the corporation; (d) the domination or control of the corporation by the stockholders; and (e) the disregard of formalities and the failure to maintain arms-length transactions with the corporation.  *See Politte v. United States*, Civil No. 07cv1950 AJB (WVG), 2012 WL 965996, at *10 (S.D. Cal. Mar. 21, 2012).  To survive a motion to dismiss, a plaintiff need only plead two or three of these factors. *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (citation omitted).

Plaintiffs allege that Dummler and O'Donnell each "gained dominion and control of LEC and through the exercise of such dominion and control caused the separate identity of" LEC to cease.  (Compl. ¶¶ 7–8, ECF No. 1.)  Plaintiffs further claim that "the acts, business and contracts of LEC were the acts of" Dummler and O'Donnell, "and vice versa," rendering LEC a mere "business conduit" through which Dummler and O'Donnell transact their own business.  (*Id.*)  However, beyond these conclusory assertions of dominion and control, Plaintiffs fail to address the relevant factors.  For example, Plaintiffs make no allegations concerning, *inter alia*: whether Dummler and O'Donnell are the sole members of LEC; whether LEC is undercapitalized; whether Dummler, O'Donnell, and LEC share an attorney; how, specifically, Dummler and O'Donnell have asserted dominion and control over LEC; or whether any payments for LEC's services were made out to either Dummler or O'Donnell instead of LEC.  These

allegations are simply insufficient to plead unity of interest.

Because Plaintiffs have not adequately alleged a unity of interest between either Dummler and LEC or O'Donnell and LEC, Plaintiffs' alter ego theory of liability against Defendants fails.  Therefore, the Court need not address at this time whether, as to each alter-ego claim against Defendants, Plaintiffs have sufficiently alleged that recognizing the corporate form would lead to an inequitable result.  Accordingly, the Court **GRANTS** Defendants' MTDs as to all claims alleging Dummler and O'Donnell's liability under an alter ego theory.  However, the dismissal of these claims is **WITHOUT PREJUDICE**, as Plaintiffs claim to be capable of alleging additional facts establishing Defendants' alter ego liability.  (Opp'n to Dummler MTD 14–15, ECF No. 69; Opp'n to O'Donnell MTD 14–15, ECF No. 70.)

## B.    *Individual Liability*

Of course, a member of a limited liability company ("LLC") will be liable to third parties for his own participation in tortious conduct or breach of contractual duty. Cal. Corp. Code § 17703.04(c).  Plaintiffs appear to argue that Defendants are liable in their individual capacities for the following claims: (1) intentional and negligent misrepresentation; (2) conversion (only as to Dummler); (3) violations of California's Unfair Competition Law ("UCL"); (4) misappropriation of ideas; (5) intentional interference with contractual relations; and (6) intentional and/or negligent interference with prospective business relationships.  (*See generally* Opp'ns, ECF Nos. 69, 70.)

### i.    *Claim 4: Intentional Misrepresentation*

The elements of a claim for intentional misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

Because a claim for misrepresentation sounds in fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply.  For misrepresentation claims,

this standard is met when a party specifies the time, place, and specific content of the alleged fraudulent representation; the identity of the person engaged in the fraud; and "'the circumstances indicating falseness'" or "'the manner in which [the] representations were false and misleading.'" *Genna v. Digital Link Corp.*, 25 F. Supp. 2d 1032, 1038 (N.D. Cal. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants argue that Plaintiffs' claim for intentional misrepresentation fails because Plaintiffs do not allege with the requisite level of specificity: (1) the purported false representations, (2) intent to induce reliance or actual reliance, and (3) damage. (Dummler MTD 13–16, ECF No. 65-1; O'Donnell MTD 12–16, ECF No. 68-1.) Plaintiffs counter that the Complaint adequately pleads Defendants' fraud. The Court agrees with Plaintiffs.

First, Plaintiffs allege that, on June 21, 2012, Defendants urged Plaintiffs to continue the Tour by falsely telling Plaintiffs "that they would be able to get Macy's to perform its obligations." (Compl. ¶¶ 74, 105, ECF No. 1.) Plaintiffs also claim that, on June 25, 2012, Dummler told Plaintiffs that LEC would hold the CCT Assets until Plaintiffs told him where to ship them. (*Id.* ¶¶ 75, 105.) These factual allegations are detailed and specify who said them, the date on which they were said, and where. Second, Plaintiffs allege that Defendants knew these representations were false. (*Id.* ¶¶ 105, 113.) Third, Plaintiffs allege Defendants' intent to defraud or induce reliance. (*Id.* ¶¶ 106, 113.) Contrary to Defendants' arguments, knowledge and intent may be pled generally. *See* Fed. R. Civ. P. 9(b).

Fourth, Plaintiffs allege justifiable reliance by stating, *inter alia*, that: Plaintiffs had a "mutual understanding [with Dummler and LEC] that ownership of all intellectual property and creative assets pertaining to GACT . . . were and would, at all times, remain exclusively the property of [Plaintiffs] and would be delivered to [Plaintiffs] at any time, on demand"; Dummler and LEC promised to "do as instructed by

[Plaintiffs]"; LEC and Dummler had "extensive workings with public television programming"; and Defendants asked Plaintiffs to "have confidence" that they could get Macy's to make its sponsorship payments. (*Id.* ¶¶ 48, 50, 74.) Finally, Plaintiffs allege damage. (*Id.* ¶¶ 109, 115.) Defendants' appear to have caused Plaintiffs' harm, since Plaintiffs would have stopped the Tour earlier had Defendants not urged them otherwise. (*Id.* ¶ 74.) As a whole, the Complaint satisfactorily gives Defendants notice of their purported fraud and makes out a prima facie claim for intentional misrepresentation. Accordingly, the Court finds that these allegations are sufficient to survive Defendants' MTDs and **DENIES** the MTDs as to this claim.

> ii.   *Claim 5: Negligent Misrepresentation*

To allege a claim for negligent misrepresentation, a plaintiff must plead: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011) (citation and internal quotation marks omitted). Moreover, under California law, "[t]he existence of a duty of care is necessary to support a negligent misrepresentation claim." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) (citations omitted).

Defendants make the same arguments against this claim as against Plaintiffs' intentional misrepresentation claim. (*See* Dummler MTD 13–16, ECF No. 65-1; O'Donnell MTD 12–16, ECF No. 68-1.) For the reasons provided above, however, the Court believes that Plaintiffs have adequately pleaded the five elements of a claim for negligent misrepresentation. Yet Defendants also argue that Plaintiffs' claim must fail because Plaintiffs do not allege that Defendants owed them a duty of care. (Dummler MTD 15, ECF No. 65-1; O'Donnell MTD 15, ECF No. 68-1.) The Court agrees that, on its face, the Complaint fails to allege that Defendants owed Plaintiffs a duty of care. Plaintiffs' purported contract was with LEC, not with Defendants individually, and

1  Plaintiffs have alleged no other relationship that would create a duty.  Accordingly, the

2  Court **GRANTS** Defendants' MTDs as to this claim **WITHOUT PREJUDICE**.

3          *iii.      Claim 6: Conversion*

4          Dummler argues that Plaintiffs' conversion claim fails "because Plaintiffs do not

5  allege Dummler actually possessed the CCT Assets at any time, let alone converted the

6  'CCT Assets.'  Plaintiffs admit they <u>voluntarily shipped</u> (i.e. consented) the CCT Assets

7  to LEC's offices in Chicago, not to Dummler; therefore they [*sic*] can be no wrongful

8  act." (Dummler MTD 16, ECF No. 65-1 (emphasis in original).)  Dummler argues that

9  Plaintiffs merely allege that Dummler used the CCT Assets, and that mere use is

10  insufficient.  (*Id.* at 16–17.)  Dummler also claims that, as an "innocent receiver" of the

11  CCT Assets, he cannot be held liable for conversion.  (*Id.* at 17.)  Plaintiffs argue that

12  they properly allege conversion because they allege "more than mere use," and "[a]n

13  action for conversion lies not only in the taking of another's property, but also in the

14  wrongful retention and/or use of that property." (Opp'n to Dummler MTD 20, 21, ECF

15  No. 69.)  The Court agrees with Plaintiffs.

16          The elements of a claim for conversion consist of (1) ownership or a right to

17  possession, (2) wrongful disposition of the property, and (3) damages.  *G. S. Rasmussen*

18  *& Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  First,

19  Plaintiffs repeatedly assert their ownership of the GACT copyright, trademark, and

20  content.  (Compl. ¶¶ 14–16, 28, 48, 118, ECF No. 1.)  While Plaintiffs purportedly

21  "consented to LEC holding the CCT Assets temporarily until it could be determined

22  where they should be sent," Plaintiffs have since requested the return of the CCT

23  Assets.  (*Id.* ¶¶ 75, 77.)  Thus, Plaintiffs had a right to immediate possession of the CCT

24  Assets.

25          Second, Plaintiffs allege that, despite Plaintiffs' requests, Dummler has not

26  returned the CCT Assets.  (*Id.* ¶ 77.)  Rather, Plaintiffs claim that Dummler released at

27  least some of the CCT Assets to Macy's, and that he has engaged various public

28  television stations to air GACT, claiming that he and other defendants produced and

13cv2714

own the show.  (*Id.* ¶¶ 78(i), 85.)  Thus, Plaintiffs allege that Dummler engaged in a wrongful disposition of the CCT Assets by retaining and then distributing them for his own benefit.

Dummler also contends, however, that the claim must be dismissed because Plaintiffs improperly seek compensatory damages rather than the damages for conversion mandated by California Civil Code § 3336.  (Dummler MTD 17, ECF No. 65-1.)  However, Plaintiffs allege that they "ha[ve] been damaged" by their loss of the CCT Assets and their inability to distribute GACT themselves.  (Compl. ¶¶ 102, 122, ECF No. 1.)  This is all that is required on a motion to dismiss.  *See Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D. Cal. July 16, 1996) ("[A] Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled" (citation, alteration, and internal quotation marks omitted).).  Accordingly, Plaintiffs have stated a prima facie claim for conversion, and the Court **DENIES** Dummler's MTD as to this claim.

   *iv.    Claim 11: Violation of California Business and Professions Code § 17200*

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  Defendants argue that Plaintiffs' claim is too conclusorily pleaded to state a viable claim.  (Dummler MTD 23–24, ECF No. 65-1; O'Donnell MTD 23–24, ECF No. 68-1; Reply 13, ECF No. 75-3.)[3]

Plaintiffs argue that, because Defendants' actions constitute business practices, and because those acts "form the basis of several other claims for relief" in the Complaint, they have satisfactorily alleged unlawful business activities.  (Opp'n to Dummler MTD 26–27, ECF No. 69; Opp'n to O'Donnell MTD 26, ECF No. 70.)  The

---

[3] Defendants also claim that Plaintiffs' request for purportedly unavailable remedies also mandates dismissal of the claim.  (Dummler MTD 24, ECF No. 65-1; O'Donnell MTD 24, ECF No. 68-1.)  Because "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled," however, the Court disregards this argument.  *Summit Tech.*, 933 F. Supp. at 927–28 (citation, alteration, and internal quotation marks omitted).

13cv2714

Court agrees.  "An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law."  *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985) (internal quotation marks omitted) (quoting *People v. McKale*, 25 Cal. 3d 626, 631–32 (1979)).  The act of promoting and distributing a television show is certainly a business practice.  Further, the Court has found that Plaintiffs have plausibly alleged at least one violation of law as to each of Dummler and O'Donnell.  Accordingly, those violations can serve as predicate unlawful business activities under the UCL.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable" (internal quotation marks and citations omitted).).

Plaintiffs also claim to have pleaded unfair business practices against Defendants.  Plaintiffs claim that Defendants' unfair acts include, *inter alia*, refusing to return the CCT Assets, giving Macy's the CCT Assets, and finishing and promoting the allegedly infringing show.  (Opp'n to Dummler MTD 26, ECF No. 69; Opp'n to O'Donnell MTD 25–26, ECF No. 70.)  Plaintiffs claim that the question of whether such acts are "unfair" is one of fact best left to the jury.  (*Id.*)  Under the UCL, however, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544.  Plaintiffs' allegations, if true, allege unfair acts in a more generalized moral sense.  *See F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (explaining that "a practice that is neither in violation of the antitrust laws nor deceptive [can] nonetheless [be] unfair" if it is "immoral, unethical, oppressive, or unscrupulous").  However, Plaintiffs' allegations fail to allege acts that more narrowly violate the spirit of the antitrust laws, such as horizontal price fixing, exclusive dealing, or monopolization.  *See* Holmes & Mangiaracina, Antitrust Law Handbook § 7:2.  Accordingly, Plaintiffs do not allege

1    unfair business practices within the meaning of the UCL.

2          Finally, Plaintiffs argue that Defendants have engaged in fraudulent business

3    practices by promoting the show and claiming to be its sole owners.  (Opp'n to

4    Dummler MTD 27, ECF No. 69; Opp'n to O'Donnell MTD 26–27, ECF No. 70.)  The

5    Court agrees that such acts are fraudulent under the UCL.  "The fraud prong of the UCL

6    is unlike common law fraud or deception.  A violation can be shown even if no one was

7    actually deceived[ or] relied upon the fraudulent practice. . . .  Instead, it is only

8    necessary to show that members of the public are likely to be deceived."  *Schnall v.*

9    *Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (internal quotation marks, citations,

10   and alteration omitted).  Accepting Plaintiffs' allegations as true, Defendants are

11   actively trying to deceive the public into believing that Plaintiffs' show is their own.

12   And, because Plaintiffs are unable to promote or distribute the show themselves,

13   Defendants are likely to deceive the public into believing this to be true.  Accordingly,

14   Plaintiffs have pleaded with adequate specificity that Defendants engaged in unlawful

15   and fraudulent acts plausibly violating the UCL, and thus the Court **DENIES**

16   Defendants' MTDs as to this claim.

17          *v.    Claim 12: Misappropriation of Ideas*

18          The Court finds that Plaintiffs' twelfth claim is preempted by the Copyright Act

19   of 1976 ("the Act").  "Preemption occurs when (1) the work at issue comes within the

20   subject matter of copyright and (2) the rights granted under state law are 'equivalent to

21   any of the exclusive rights within the general scope of copyright' set forth in the Act."

22   *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000) (quoting

23   *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)).

24          First, because Plaintiffs' ideas have been affixed in a tangible, copyrighted

25   work—the GACT footage—Plaintiffs' twelfth claim falls within the scope of federal

26   copyright law.  *See id.* at  1057–59.  Second, the rights afforded by the Act are

27   equivalent because Plaintiffs "allege an implied-in-fact contract not to use [their] ideas

28   and concepts . . . without compensating [them]," rather than a contract that "protects or

creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution, or display." *Id.* at 1062, 1060–61 (citation omitted).  Accordingly, Plaintiffs' twelfth claim is preempted, and therefore this Court **GRANTS WITH PREJUDICE** Defendants' MTDs as to this claim.

> vi.     *Claim 13: Intentional Interference with Contractual Relations*

According to the Supreme Court of California,

> "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."

*Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).  The third element incorporates a requirement that the defendant's "alleged wrongful or unjustified conduct caused the breach." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).

Defendants argue that Plaintiffs' general allegations "fail to provide any specifics about: (1) the various contracts or the terms thereof; (2) the identity of the defendant that allegedly interfered with which contract; (3) whether there was an actual breach of any contract . . . [;] and (4) the intentional act that was independently wrongful." (Dummler MTD 26, ECF No. 65-1; O'Donnell MTD 26, ECF No. 68-1.)  Defendants further suggest that Plaintiffs cannot allege damages at all, much less that Defendants' actions *caused* any damages, because "the television series at issue was going to air on PBS and it is nearly axiomatic that PBS does not pay for content." (Dummler MTD 27, ECF No. 65-1; O'Donnell MTD 27, ECF No. 68-1.)  Plaintiffs, on the other hand, claim to have adequately pleaded all five elements.  (Opp'n to Dummler MTD 28, ECF No. 69; Opp'n to O'Donnell MTD 28, ECF No. 70.)

First, Plaintiffs plead the existence of valid contracts with Macy's and Alexander, and have attached the contracts as exhibits to the Complaint. (*See* Compl., ECF Nos. 1, 1-1.)  Second, the Complaint contains sufficient allegations that Dummler and

1   O'Donnell knew of Plaintiffs' various contracts.   (*See id.* ¶¶ 50 (Dummler
2   acknowledged Macy's role as a GACT sponsor), 68 (O'Donnell became involved in
3   GACT when he grew concerned that Macy's had not paid its sponsorship fees, and
4   inserted himself into Plaintiffs' relationships with, *inter alia*, Macy's, Whirlpool, and
5   Alexander), 74 (Plaintiffs explained to Defendants "how much money [Plaintiffs]
6   would lose if the Tour continued without Macy's performance of its promises"), 78(e)
7   (Defendants knew Macy's had neither signed the purchase order nor paid its
8   sponsorship fees), 161 (Defendants knew of Plaintiffs' "existing contracts and
9   relationships with, among others, Alexander, WTTW, APT, chefs, and public
10  broadcasting stations").)

11      Third, Plaintiffs claim to allege the following intentional acts by Defendants
12  designed to induce third parties to breach their contracts with Plaintiffs: giving Macy's
13  and/or Whirlpool at least some of the CCT Assets, and shooting and editing the
14  remaining GACT episodes for Macy's.  (Opp'n to Dummler MTD 28, ECF No. 69
15  (citing Compl. ¶ 78, ECF No. 1); Opp'n to O'Donnell MTD 28, ECF No. 70 (citing
16  Compl. ¶ 78, ECF No. 1).)  Further, Plaintiffs allege that, "[d]espite knowing of these
17  contracts and existing business relationships, said Defendants, and each of them,
18  intentionally interfered with those contracts and business relationships."  (*Id.* ¶ 162.)

19      As to Dummler, these assertions are insufficient to establish the third element
20  because they do not allege causation—namely, Plaintiffs do not allege why Dummler,
21  rather than other forces, caused Macy's or other parties to breach their contracts.  As to
22  O'Donnell, however, Plaintiffs satisfactorily plead intentional acts that disrupted
23  Plaintiffs' contractual relationships.  Plaintiffs additionally plead that O'Donnell
24  "inserted himself, over the objections of [Plaintiffs], into the relationships of
25  [Plaintiffs], Macy's, Whirlpool, and Alexander, among others.  In so doing he attempted
26  to renegotiate those relationships, for the benefit of LEC, Dummler, and himself."
27  (Compl. ¶ 68, ECF No. 1.)  This allegation suggests that, in so acting, O'Donnell caused
28  Macy's, Whirlpool, and Alexander to form new relationships with O'Donnell.  This

resulted in the disruption of those parties' relationships with Plaintiffs by causing said parties to forego their contractual duties to Plaintiffs and market GACT as their own.

Fourth, Plaintiffs allege an actual breach of their contract with Macy's, as Macy's never made its third sponsorship payment.  (*Id.* ¶ 75.)  Finally, Plaintiffs allege damages, not only monetary, but also to their "business, reputation and good will." (*Id.* ¶¶ 163–66.)  These harms are purported to be the result of O'Donnell's interference. Further, even if—as Defendants allege—Plaintiffs would have received no direct compensation from public broadcasting stations for the GACT content, missing out on the opportunity to market GACT may nonetheless have harmed Plaintiffs by causing them to lose the opportunity to gain publicity and positive ratings that could have led to further business.  Further, a cooking show seems particularly well-suited to the marketing of additional revenue-generating tie-ins such as, *inter alia*, cookware, packaged foods, cookbooks, T-shirts, and restaurants.

Accordingly, Plaintiffs fail to state a plausible claim for intentional interference with contractual relations as to Dummler, and thus the Court **GRANTS WITHOUT PREJUDICE** Dummler's MTD as to this claim.  However, Plaintiffs do state a claim for intentional interference with contractual relations as to O'Donnell, and therefore the Court **DENIES** O'Donnell's MTD as to this claim.

### vii. Claims 14 and 16: Intentional and Negligent Interference with Prospective Economic Advantage

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Youst v. Longo*, 729 P.2d 728, 733 n.6 (1987) (citing *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975)).  Similarly, a plaintiff pleads a claim for negligent interference with prospective economic advantage if he alleges:

13cv2714

1

2

3

4

5

6

> (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware of should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

7

8

9

10

11

*N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997) (citations omitted).   "[A]s a matter of law, a threshold causation requirement exists for maintaining a cause of action for either tort, namely, proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference."  *Id.* (emphasis in original).

12

13

14

15

16

17

18

19

20

As to Dummler, the Court has already found, with regards to Plaintiffs' thirteenth claim, that Plaintiffs fail to establish that Dummler's intentional acts *caused* Plaintiffs' harm.  (*See supra* p. 17.)  Accordingly, Plaintiffs fail to state a claim for intentional interference with prospective economic advantage as to Dummler, and the Court **GRANTS WITHOUT PREJUDICE** Dummler's MTD as to this claim.  However, the Court has also found that Plaintiffs have pleaded all five elements as to O'Donnell. (*See supra* pp. 17–18.)  Accordingly, Plaintiffs state a claim for intentional interference with prospective economic advantage as to O'Donnell, and the Court **DENIES** O'Donnell's MTD as to this claim.

21

22

23

24

25

As for the negligent form of the tort, the Court  has determined that Plaintiffs fail to allege that Defendants owed them a duty of care.  (*See supra* pp. 11–12.) Accordingly, Plaintiffs fail to state a claim for negligent interference with prospective economic advantage, and the Court **GRANTS WITHOUT PREJUDICE** Defendants' MTDs as to this claim.

26

*viii.    Claim 15: Negligent Interference with Contractual Relations*

27

28

Finally, Defendants argue that this claim must be dismissed because California does not recognize the tort of negligent interference with contractual relations.

(Dummler MTD 27, ECF No. 65-1; O'Donnell MTD 27, ECF No. 68-1.)  The Court agrees, and accordingly **GRANTS WITH PREJUDICE** Defendants' MTDs as to this claim.  *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636–37 (1960) (explaining that California courts "have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties," and refusing to recognize said cause of action because "to so hold would constitute an unwarranted extension of liability for negligence"); *see also Express Diagnostics Int'l, Inc. v. Tydings*, No. C 06-01346 JW, 2009 WL 111736, at \*7 n.14 (N.D. Cal. Jan. 15, 2009) (citation omitted) ("[T]he Supreme Court [of California] has yet to disapprove *Fifield*.").

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Requests for Judicial Notice.  The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss.

The Court **GRANTS** Defendants' Motions to Dismiss **WITHOUT PREJUDICE** as to claims 2, 5, 6 (as to O'Donnell), 7, 8, 9, 10, 13 (as to Dummler), 14 (as to Dummler), and 16.  The Court **GRANTS** Defendants' Motions to Dismiss **WITH PREJUDICE** as to claims 12 and 15, as amendment of these claims would be futile.  *See DeSoto*, 957 F.2d at 658.  The Court **DENIES** Defendants' Motions to Dismiss as to claims 4, 6 (as to Dummler), 11, 13 (as to O'Donnell), and 14 (as to O'Donnell).

If Plaintiffs wish, they **SHALL FILE** an amended complaint within <u>fourteen (14) days</u> of the date on which this Order is electronically docketed.  *Failure to file an amended complaint by this date may result in dismissal of Plaintiffs' claims against Defendants with prejudice.*

**IT IS SO ORDERED**.

DATED:  April 25, 2014

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge