1
2
3
4
5
6
7
8

9                    **UNITED STATES DISTRICT COURT**

10                   **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11 CELEBRITY CHEFS TOUR, LLC, a California limited liability company; and PROMARK PRODUCTIONS, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br><br><br> MACY'S, INC, a Delaware corporation; WHIRLPOOL CORPORATION, a Delaware corporation; LEC MEDIA, LLC, an Illinois limited liability company; EXECUTIVE PROGRAM SERVICES, INC., a Washington corporation; JACK O'DONNELL, an individual; SCOTT DUMMLER, an individual; DEVIN ALEXANDER, INC, a California corporation; DEVIN ALEXANDER, a.k.a. RENEE SIMONE, an individual; and DOES 1–10, inclusive, <br><br> Defendants. | CASE NO. 13-CV-2714 JLS (KSC) <br><br> **ORDER: (1) GRANTING DEFENDANTS LEC MEDIA, LLC'S REQUESTS FOR JUDICIAL NOTICE; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT LEC MEDIA, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** <br><br> (ECF Nos. 67, 75-1) |

13cv2714

Presently before the Court is Defendant LEC Media, LLC's ("LEC") Motion to Dismiss ("MTD") Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 67.) Also before the Court are Plaintiffs Celebrity Chefs Tour, LLC ("CCT") and Promark Productions, LLC's ("Promark," and, collectively, "Plaintiffs") Response in Opposition to (ECF No. 71) and LEC's Omnibus Reply in Support of (ECF No. 75-3) the MTD, as well as LEC's Requests for Judicial Notice ("RJN") (ECF Nos. 67-2, 75-1). The Court vacated the hearing on LEC's MTD and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 74.) Having considered the parties' arguments and the law, the Court **GRANTS** LEC's RJNs and **GRANTS IN PART AND DENIES IN PART** LEC's MTD.

## BACKGROUND

The Court thoroughly summarized the factual and procedural background of this case in ruling on a related motion to dismiss, and accordingly the Court hereby incorporates by reference the background as set forth therein. (*See* Order 2–7, ECF No. 78.)

## REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

LEC first asks the Court to judicially notice the following four (4) documents, all filed with the United States Patent and Trademark Office: (1) Trademark/Service

1   Mark Application for "Great American Chefs Tour," Serial No. 85284912, filed on

2   April 4, 2011; (2) Office Action regarding Trademark Application Serial No. 85284912;

3   (3) Response to Office Action regarding Trademark Application Serial No. 85284912;

4   and (4) Trademark Registration No. 4,145,234, registered May 22, 2012. (RJN, ECF

5   No. 67-2.)

6       LEC also asks the Court to judicially notice the following five (5) documents, all

7   from the action *Celebrity Chefs Tour LLC v. LEC Media, LLC, et al.*, Case No. 37-

8   2012-00085275-CU-BC-CTL, Superior Court of the State of California, County of San

9   Diego: (1) Plaintiff's Complaint, filed on November 13, 2012; (2) Plaintiff's First

10  Amended Complaint (Verified), filed on January 8, 2013; (3) Jack O'Donnell's and

11  Scott Dummler's Memorandum of Points and Authorities in Support of Demurrer to

12  Plaintiff's First Amended Complaint (Verified), filed on March 29, 2013; (4) LEC

13  Media, LLC's Memorandum of Points and Authorities in Support of Demurrer to

14  Plaintiff's First Amended Complaint (Verified), filed on March 29, 2013; and (5)

15  Register of Actions Docket. (ECF No. 75-1.)

16      All of these documents are available to the public and are certified and

17  maintained by an official office. Their accuracy cannot therefore be reasonably

18  disputed. Accordingly, the Court **GRANTS** LEC's RJNs as to all nine (9) documents.

19  However, given that some of the facts in these documents may be subject to reasonable

20  dispute, the Court does not take notice of the truth of the facts asserted therein.

21                          **MOTION TO DISMISS**

22  **I.    Legal Standard**

23      Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

24  defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

25  generally referred to as a motion to dismiss. The Court evaluates whether a complaint

26  states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

27  Procedure 8(a), which requires a "short and plain statement of the claim showing that

28  the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual

allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.

## II.    Analysis

Plaintiffs assert the following seventeen claims: (1) breach of contract (Macy's); (2) breach of contract (Dummler, LEC, and O'Donnell); (3) breach of contract (Alexander); (4) intentional misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (5) negligent misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (6) conversion (all Defendants); (7) trademark infringement (all Defendants); (8) false designation of origin (all Defendants); (9) trademark dilution (all Defendants); (10) common law unfair competition (all Defendants); (11) unfair competition in violation of California Business and Professions Code § 17200 (all Defendants); (12) misappropriation of ideas (all Defendants); (13) intentional interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (14) intentional interference with prospective economic advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (15) negligent interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (16) negligent interference with prospective economic advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); and (17) declaratory relief (EPS, LEC, Macy's, and Whirlpool).[1]  The Court addresses each in turn.

### A.    *Request for Punitive Damages*

As a preliminary matter, LEC asserts that Plaintiffs' trademark claims fail because Plaintiffs seek punitive damages, which are unavailable under the Lanham Act. (MTD 16 n.1, ECF No. 67-1.)  However, "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D. Cal. July 16, 1996) (citation, alteration, and internal quotation marks omitted).  Moreover, the Court declines to rule on the propriety of Plaintiffs' requests for punitive damages because a Rule 12(b)(6) motion is the improper vehicle for raising this argument.

---

[1] LEC does not seek to dismiss this seventeenth claim, and accordingly this Order does not address it.

Rather, LEC should have addressed this issue in a Rule 12(f) motion to strike.  *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1300 (S.D. Cal. 2011); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000); *Clement v. Am. Greetings Corp.*, 636 F. Supp. 1326, 1332, 1333–34 (S.D. Cal. 1986).

### B.    Claim 2: Breach of Contract

"Under California law, the elements required to establish actionable breach of contract are the existence and terms of the contract, plaintiff's performance, defendant's breach, and damages therefrom." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 633 (S.D. Cal. 1998) (citing *M.G. Chamberlain & Co. v. Simpson*, 173 Cal. App. 2d 274 (1959)).

LEC argues that, under California law, a claim for breach of contract premised on a written agreement must provide the relevant terms thereof, either by quoting the contract verbatim or attaching it to the complaint and incorporating it by reference. (MTD 10, ECF No. 67-1 (quoting *Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 459 (1985)).)  Thus, LEC argues that, because Plaintiffs claim that the contract in question consists of a "series of e-mails," Plaintiffs needed to include the e-mails with the Complaint, which they failed to do.  (*Id.*)  However, "California pleading requirements do not apply in federal court.  Indeed, federal courts have routinely refused to apply *Otworth* in federal cases." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1102 n.7 (E.D. Cal. 2010) (collecting cases).

Rather, federal courts "have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG)(JMA), 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011).  This is because breach of contract claims "tend to be straightforward and do not require the claimant to plead facts showing that otherwise unobjectionable conduct was, in the circumstances presented, wrongful." *Dobyns v. United States*, 91 Fed. Cl. 412, 430 n.47 (2010) (citing A. Benjamin Spencer, *Understanding Pleading Doctrine*, 108 Mich. L. Rev. 1, 33–34 (2009)).  "'The plaintiff

need not suppose any of [the elements of a breach of contract claim] to be the case; she has first-knowledge of these facts—if they indeed exist—and may simply relate them to the court to state a claim.'" *Id.* (quoting Spencer, *supra*, at 33). Indeed, the model complaints for various contract claims in the Federal Rules of Civil Procedure's Appendix of Forms illustrate the succinctness with which one may plead breach of contract. *See Comfort Inn*, 2011 WL 5238658, at *8 (citing Fed. R. Civ. P. Forms 10, 17).

Here, Plaintiffs satisfactorily allege the elements of a claim for breach of contract. First, Plaintiffs allege the existence and terms of a contract with LEC. They allege that, "[i]n or about April 2012, following several discussions with Dummler, [Plaintiffs] entered into an agreement evidenced by a series of e-mails . . . with LEC," pursuant to which

> LEC would serve as an independent contractor editor of Pilot No. 2 and the independent contractor production company, on behalf of [Plaintiffs], to, among other things to be determined from time-to-time, provide [Plaintiffs] with all production, post-production, technical, and logistical services that [Plaintiffs] deemed were necessary for the filming of the Tour and the possible post-production of that content, in a timely manner, so that the TV Show could be distributed to public television stations for presentation and airing commencing with the fall 2012 television season. The . . . salient terms . . . included the mutual understanding that ownership of all intellectual property and creative assets pertaining to GACT . . . were and would, at all times, remain exclusively the property of [Plaintiffs] and would be delivered to [Plaintiffs] at any time, on demand.

(Compl. ¶ 48, ECF No. 1.) These are sufficient allegations of the substance of the contract's relevant terms. *See TreeFrog Devs., Inc. v. Seidio, Inc.*, 2013 WL 4028096, No. 13cv0158-IEG (KSC), at *3 (S.D. Cal. Aug. 6, 2013) (providing examples of similar, if not less concrete, allegations that suffice). Second, Plaintiffs plead that they performed all obligations required of them under the contract, including the apparent payment of $111,623. (*Id.* ¶¶ 96, 78(c).) Third, Plaintiffs claim that LEC breached the contract. (*Id.* ¶ 97.) Specifically, LEC has not turned over the CCT Assets, as it was required to do, and instead has entered into its own contract to distribute the show as its own. (*Id.* ¶¶ 77, 84–85, 95.) Finally, Plaintiffs claim to have been damaged by

1  LEC's breaches. (*Id.* ¶ 97.) Accordingly, Plaintiffs have satisfactorily pleaded a claim

2  for breach of contract, and the Court **DENIES** LEC's MTD as to this claim.

3  **C.      Claim 4: Intentional Misrepresentation**

4       The elements of a claim for intentional misrepresentation are: "(1) a

5  misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge

6  of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable

7  reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d

8  268, 274 (Cal. 2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

9       Because a claim for misrepresentation sounds in fraud, the heightened pleading

10  standards of Federal Rule of Civil Procedure 9(b) apply. For misrepresentation claims,

11  this standard is met when a party specifies the time, place, and specific content of the

12  alleged fraudulent representation; the identity of the person engaged in the fraud; and

13  "'the circumstances indicating falseness'" or "'the manner in which [the]

14  representations were false and misleading.'" *Genna v. Digital Link Corp.*, 25 F. Supp.

15  2d 1032, 1038 (N.D. Cal. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

16  1547–48 (9th Cir. 1994)). Merely attributing a misrepresentation to a corporate entity

17  is inadequate; the plaintiff must identify the agent who made the statement. *See Mat-

18  Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912, 2007 WL 2206946,

19  at *5 (S.D. Cal. July 27, 2007) (citations omitted).

20       LEC argues that Plaintiffs' claim for intentional misrepresentation fails because

21  Plaintiffs do not allege with the requisite level of specificity (1) the purported false

22  representations, (2) intent to induce reliance or actual reliance, and (3) damage. (MTD

23  12–14, ECF No. 67-1; Reply 8–9, ECF No. 75-3.) Plaintiffs counter that the Complaint

24  adequately pleads LEC's fraud. The Court agrees with Plaintiffs.

25       First, Plaintiffs allege that, on June 21, 2012, Defendants Scott Dummler

26  ("Dummler") and Jack O'Donnell ("O'Donnell")—each "an officer, managing agent,

27  owner, proprietor, or otherwise executive in charge of production for LEC" at the

28  relevant points in time—urged Plaintiffs to continue the Tour by falsely telling

Plaintiffs "that they would be able to get Macy's to perform its obligations." (Compl. ¶¶ 7–8, 74, 105, ECF No. 1.) Plaintiffs also claim that, on June 25, 2012, Dummler told Plaintiffs that LEC would hold the CCT Assets until Plaintiffs told him where to ship them. (*Id.* ¶¶ 75, 105.) These factual allegations are detailed and specify who said them, the date on which they were said, and where. Second, Plaintiffs allege that Dummler and O'Donnell knew these representations were false. (*Id.* ¶¶ 105, 113.) Third, Plaintiffs allege Dummler and O'Donnell's intent to defraud or induce reliance. (*Id.* ¶¶ 106, 113.) Contrary to LEC's arguments, knowledge and intent may be pled generally. *See* Fed. R. Civ. P. 9(b).

Fourth, Plaintiffs allege justifiable reliance by stating, *inter alia*, that: Plaintiffs had a "mutual understanding [with Dummler and LEC] that ownership of all intellectual property and creative assets pertaining to GACT . . . were and would, at all times, remain exclusively the property of [Plaintiffs] and would be delivered to [Plaintiffs] at any time, on demand"; Dummler and LEC promised to "do as instructed by [Plaintiffs]"; Dummler and LEC had "extensive workings with public television programming"; and Dummler and O'Donnell asked Plaintiffs to "have confidence" that they could get Macy's to make its sponsorship payments. (*Id.* ¶¶ 48, 50, 74.) Finally, Plaintiffs allege damage. (*Id.* ¶¶ 109, 115.) Dummler and O'Donnell appear to have caused Plaintiffs' harm, as Plaintiffs allege that they would have stopped the Tour earlier had Dummler and O'Donnell not urged them otherwise. (*Id.* ¶ 74.) As a whole, the Complaint satisfactorily gives LEC notice of its purported fraud—as carried out by its agents—and makes out a prima facie claim for intentional misrepresentation. Accordingly, the Court **DENIES** LEC's MTD as to this claim.

### D.    Claim 5: Negligent Misrepresentation

To allege a claim for negligent misrepresentation, a plaintiff must plead: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting

damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011) (citation and internal quotation marks omitted).  Moreover, under California law, "[t]he existence of a duty of care is necessary to support a negligent misrepresentation claim." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) (citations omitted).

LEC makes the same arguments against this claim as against Plaintiffs' intentional misrepresentation claim. (*See* MTD 12–14, ECF No. 67-1.)  For the reasons provided above, however, the Court believes that Plaintiffs have adequately pleaded the five elements of a claim for negligent misrepresentation.  LEC additionally argues that Plaintiffs' claim must fail because Plaintiffs do not allege that LEC owed them a duty of care.  (MTD 13, ECF No. 67-1.)  However, a contract can give rise to a duty of care, and a breach of said duty may result in tort liability.  *See, e.g.*, *J'Aire Corp. v. Gregory*, 598 P.2d 60, 62 (Cal. 1979); *Eads v. Marks*, 249 P.2d 257, 261 (Cal. 1952).  For the reasons previously stated, Plaintiffs have pleaded a prima facie claim of breach of contract; hence, Plaintiffs have pleaded that LEC owed them a contractual duty of care.  Accordingly, Plaintiffs have pleaded a claim for negligent misrepresentation, and the Court **DENIES** LEC's MTD as to this claim.

### E.    Claim 6: Conversion

LEC argues that Plaintiffs' conversion claim fails because "Plaintiffs admit they voluntarily shipped (i.e. consented) the CCT Assets to LEC's offices in Chicago; therefore they [*sic*] can be no wrongful act." (MTD 14–15, ECF No. 67-1 (emphasis in original).)  Plaintiffs argue that they properly allege conversion because "[a]n action for conversion lies not only in the taking of another's property, but also in the wrongful retention and/or use of that property."  (Pls.' Resp. in Opp'n 17, ECF No. 71.)  The Court agrees with Plaintiffs.

The elements of a claim for conversion consist of (1) ownership or a right to possession, (2) wrongful disposition of the property, and (3) damages.  *G. S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  First,

13cv2714

Plaintiffs repeatedly assert their ownership of the GACT copyright, trademark, and content. (Compl. ¶¶ 14–16, 28, 48, 118, ECF No. 1.) While Plaintiffs purportedly "consented to LEC holding the CCT Assets temporarily until it could be determined where they should be sent," Plaintiffs have since requested the return of the CCT Assets. (*Id.* ¶¶ 75, 77.) Thus, Plaintiffs had a right to immediate possession of the CCT Assets.[2]

Second, Plaintiffs allege that, despite Plaintiffs' requests, LEC—through its agents Dummler and/or O'Donnell—has not returned the CCT Assets. (*Id.* ¶ 77.) Rather, Plaintiffs claim that LEC released at least some of the CCT Assets to Macy's, and that LEC has engaged various public television stations to air GACT, claiming that it and other Defendants produced and own the show. (*Id.* ¶¶ 78(i), 85.) Thus, Plaintiffs allege that LEC engaged in a wrongful disposition of the CCT Assets by retaining and then distributing them for its own benefit.[3]

LEC also contends, however, that the claim must be dismissed because Plaintiffs improperly seek compensatory damages rather than the damages for conversion

---

[2] LEC argues that Plaintiffs cannot establish their ownership in/right to possession of the CCT Assets because Plaintiffs' claim for declaratory relief "admits" that the ownership of the CCT Assets is disputed. (Reply 10, ECF No. 75-3.) Not only is this argument nonsensical—Plaintiffs, after all, assert that they have "full and exclusive right to possession of all of the CCT Assets," and merely ask that the Court officially declare said possessory interest (*see* Compl. ¶ 189, ECF No. 1)—but, regardless, claims for conversion and declaratory relief are not mutually exclusive. *See, e.g., Lincoln Gen. Ins. Co. v. Tri Cntys. Bank*, No. CIV. S-10-1442 FCD/EFB, 2010 WL 3069874, (E.D. Cal. Aug. 5, 2010) (denying defendant's motion to dismiss as to both conversion and declaratory relief claims).

[3] In its Reply, LEC also argues that this claim fails because Plaintiffs claim an interference with intangible property, but conversion can only concern tangible property. (Reply 9–10, ECF No. 75-3.) The Court disagrees for two reasons. First, many of the CCT Assets are in fact tangible property, including the actual footage of GACT. (*See* Compl. ¶ 75, ECF No. 1 (defining the CCT Assets as, *inter alia*, "the raw tapes, post-produced products, and other production assets of the episodes that had been taped as well as the personal property of [Plaintiffs] that was used or intended to be used in the production of the Tour and TV Show, including . . . sets, set decorations, equipment, appliances, [and] hardware").) But, even if Plaintiffs' claim concerned solely intangible property, that fact alone would not bar the claim. The authority on which LEC relies in asserting its argument is outdated, as the Ninth Circuit has since explicitly held that intangible property can be subject to a conversion claim. *See Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2002) ("In short, California does not follow the *Restatement*'s strict requirement that some document must actually represent the owner's intangible property right. On the contrary, courts routinely apply the tort [of conversion] to intangibles without inquiring whether they are merged in a document.").

mandated by California Civil Code § 3336.  (MTD 15, ECF No. 67-1.)  However, Plaintiffs allege that they "ha[ve] been damaged" by their loss of the CCT Assets and their inability to distribute GACT themselves.  (Compl. ¶¶ 102, 122, ECF No. 1.)  This is all that is required on a motion to dismiss.  *See Summit Tech.*, 933 F. Supp. at 927–28. Accordingly, Plaintiffs have stated a prima facie claim for conversion, and the Court **DENIES** LEC's MTD as to this claim.

### F.      Claims 7 & 8: Trademark Infringement and False Designation of Origin

To state a claim for federal trademark infringement under the Lanham Act, a plaintiff must show: "'(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted).  A claim for false designation of origin is subject to "[t]he same standard," except a claim for false designation of origin does not require that the mark be registered.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. §§ 1114(1) (trademark infringement), 1125(a)(1) (false designation of origin)).  Thus, the Court analyzes these claims jointly.

As to the first element, LEC argues that judicially noticeable records establish that only CCT owns the GACT trademark, and thus Plaintiffs' trademark claims must be dismissed as to Promark.  (MTD 15, ECF No. 67-1.)  This is not, however, necessarily true.  The public records at issue are dated June 2011 through May 2012. Thus, it is possible that CCT assigned the GACT mark to Promark sometime after May 22, 2012 but prior to or during the acts comprising Plaintiffs' allegations.  Thus, the Court declines at this time to dismiss the trademark claims against Promark on this basis.  Plaintiffs allege ownership of the mark as to both CCT *and* Promark, and thus Plaintiffs have sufficiently alleged the first element of their trademark infringement claim.  (*See* Compl. ¶¶ 16, 125, ECF No. 1.)

As to the second element, LEC argues that Plaintiffs fail to allege "that LEC is using any trademark, let alone using CCT's trademark or a colorable imitation of CCT's

mark on goods in commerce without CCT's consent or that such use is likely to cause confusion, mistake or deceive the public." (MTD 16, ECF No. 67-1.) The Court disagrees. When evaluating likelihood of confusion on a motion to dismiss, "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981)). But, while likelihood of confusion *is capable* of being decided as a matter of law, "[w]hether confusion is likely is a factual determination woven into the law" that courts "routinely treat . . . as [an issue] of fact" best left for determination by a jury. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356, 1356 n.5 (9th Cir. 1985).

Here, it does not appear that consumer confusion is unlikely as a matter of law. Plaintiffs allege that "Defendants have used and are using [Plaintiffs'] registered mark." (Compl. ¶ 126, ECF No. 1.) Plaintiffs claim that Defendants are using the mark in commerce, "in connection with the distribution[] and/or advertising of a television show." (*Id.*) More specifically, Plaintiffs allege that LEC has distributed GACT to public broadcast stations and the public pursuant to a contract with Executive Program Services, Inc., despite knowing that Plaintiffs own all interests in GACT, and that LEC and other Defendants have attempted "to deceive the public and public television stations" into believing that GACT belongs to them. (*Id.* ¶¶ 83–86.) Confusion seems particularly likely given that the goods are so similar—indeed, Plaintiffs claim that Defendants are in reality marketing Plaintiffs' television show as Defendants' own. (*Id.* ¶¶ 79–87.)

LEC argues that Plaintiffs' Opposition "makes it clear" that the true basis for their trademark claims is the use of a similar *name*, not a similar *mark*, and because Plaintiffs disclaimed a "protectable interest in any one of the words used in their trademark separate and apart from the registered mark," Defendants' use of the name "American Chefs on Tour" cannot alone constitute trademark infringement. (Reply

10–11, ECF No. 75-3 (citing RJN Ex. 2, ECF No. 67-3).)

In ruling on a Rule 12(b)(6) motion, a court generally cannot consider matters outside of the pleadings without converting the motion into one for summary judgment. "Memoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleadings." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (citations and internal quotation marks omitted). However, "[c]onsideration of legal documents outside the pleadings is limited to the non-factual contents thereof." *Jones v. Penn Nat'l Ins. Co.*, 835 F. Supp. 2d 89, 94 (W.D.N.C. 2011) (citations omitted); *accord Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984). Thus, "'[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition.'" *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

The Court declines to convert this motion into one for summary judgment. Moreover, Plaintiffs' Complaint explicitly alleges that LEC's trademark infringement arises from its "use of [GACT] *names and marks*" without Plaintiffs' authority and in a manner likely to cause confusion. (Compl. ¶ 126, ECF No. 1.) Merely because Plaintiffs chose to focus on LEC's use of a confusingly similar *name* in their Opposition does not negate the allegations in their Complaint that LEC also used Plaintiffs' protected *mark*. The Court, therefore, declines to dismiss these claims on this basis. Accordingly, the Court finds that Plaintiffs have satisfactorily alleged federal trademark infringement and false designation of origin claims and accordingly **DENIES** LEC's MTD as to these claims.

### G. *Claim 9: Trademark Dilution*

To plead a claim for federal trademark dilution, a plaintiff must show that it owns a famous and distinctive trademark, that the defendant began using the mark in commerce after the mark became famous, and that the defendant's use of the mark is

13cv2714

likely to cause dilution by blurring or tarnishment. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089–90 (9th Cir. 2010) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007)); *see also* 15 U.S.C. § 1125(c).

The parties disagree as to whether Plaintiffs adequately allege a famous mark. "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).  In determining whether a mark is famous, a court may consider "all relevant factors," including: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered.  *Id.* § 1125(c)(2)(A)(i)–(iv).  LEC urges that Plaintiffs do not allege that a large percentage of the general consuming public recognizes the GACT mark, only that it was presented to several television stations in 2011 and at a public television industry event.  (MTD 19, ECF No. 67-1.)  Plaintiffs counter that LEC's arguments go to the merits of the case rather than the sufficiency of the Complaint. (Pls.' Resp. in Opp'n 20–21, ECF No. 71.) The Court, however, agrees with LEC.

The Court notes that the GACT mark is federally registered, and thus the fourth factor favors a finding of fame.  However, Plaintiffs make no allegations about any advertising and publicity efforts; Plaintiffs apparently made no sales of any GACT content; and Plaintiffs fail to allege any facts concerning *wide-reaching* access to, much less recognition of, their mark.  Plaintiffs allege that their mark was well-received by television stations and had a "substantial presence" at the APT Fall Marketplace, which appears to have been attended primarily by persons in the entertainment industry. (Compl. ¶ 138, ECF No. 1.)  Plaintiffs also argue that the show was filmed over the course of ten live events in several major cities.  (*Id.*)  However, these allegations fall short of "wide recognition," and at most suggest that the mark might be famous in the insufficient "niche" market of the entertainment industry. *See Planet Coffee Roasters,*

*Inc. v. Dam*, No. SACV 09-00571-MLG, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12, 2009) (citations omitted). Thus, even applying the relatively lax standard governing Rule 12(b)(6) motions, the Court finds that Plaintiffs' conclusory allegations of fame are fatally defective to stating a "facial[ly] plausib[le]" claim for trademark dilution. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS WITHOUT PREJUDICE** LEC's MTD as to this claim.

### H.     *Claim 10: Common Law Unfair Competition*

"'The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another . . . [, or] acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997), *not followed on other grounds by McKendall v. Crown Control Corp.*, 122 F.3d 803 (1997) (alteration in original) (quoting *Bank of the W. v. Superior Court*, 2 Cal 4th 1254, 1263 (1992)); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Bank of the W.*, 2 Cal 4th at 1263 (citation omitted). "The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) (citations omitted).

LEC argues that Plaintiffs' claim of common law unfair competition must be dismissed because Plaintiffs hold a valid, registered trademark. (*See* MTD 19–20, ECF No. 67-1; Reply 12, ECF No. 75-3.) However, courts have routinely entertained claims for both trademark infringement and common law unfair competition, implying that the two causes of action are not mutually exclusive, particularly at the pleading stage. *See, e.g.*, *Hokto Kinoko*, 810 F. Supp. 2d 1013; *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012); *Moroccanoil, Inc. v. Allstate Beauty Prods.*,

13cv2714

*Inc.*, 847 F. Supp. 2d 1197 (C.D. Cal. 2012); *Vallavista Corp. v. Amazon.com, Inc.*, 657 F. Supp. 2d 1132 (N.D. Cal. 2008); *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233 (E.D. Cal. 2007); *Area 55, Inc. v. Pandamerican LLC*, No. 10-CV-269-H (NLS), 2010 WL 3564715 (S.D. Cal. Sept. 10, 2010);  *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426 (1997).  Thus, the Court does not believe that Plaintiffs' common law unfair competition claim is precluded as a matter of law.  Moreover, because the Court has already determined that Plaintiffs have plausibly alleged possible consumer confusion (*see supra* p. 13), the Court **DENIES** LEC's MTD as to this claim.

## I.    Claim 11: Violation of California Business and Professions Code § 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  LEC argues that Plaintiffs' claim is too conclusorily pleaded to state a viable claim.  (MTD 21–22, ECF No. 67-1; Reply 13, ECF No. 75-3.)[4]

Plaintiffs argue that, because LEC's actions (through Dummler and O'Donnell) constitute business practices, and because those acts "form the basis of several other claims for relief" in the Complaint, they have satisfactorily alleged unlawful business activities. (Pls.' Resp. in Opp'n 23, ECF No. 71.)  The Court agrees.  "An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985) (internal quotation marks omitted) (quoting *People v. McKale*, 25 Cal. 3d 626, 631–32 (1979)).  The act of distributing a television show is certainly a business practice.  Further, for the reasons provided herein, the Court has found that Plaintiffs have plausibly alleged that LEC has engaged in at least one violation of law.  Accordingly, those violations can serve as predicate unlawful business activities under

---

[4] LEC also claims that Plaintiffs' request for purportedly unavailable remedies mandates dismissal of the claim.  (MTD 22, ECF No. 67-1.)  Because "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled," however, the Court disregards this argument. *Summit Tech.*, 933 F. Supp. at 927–28 (citation, alteration, and internal quotation marks omitted).

13cv2714

the UCL.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable" (internal quotation marks and citations omitted).).

Plaintiffs also claim to have pleaded unfair business practices.  Plaintiffs claim that LEC's unfair acts include, *inter alia*, inducing Plaintiffs to shoot further episodes, refusing to return the CCT Assets, giving Macy's the CCT Assets, and finishing and promoting the allegedly infringing show.  (Pls.' Resp. in Opp'n 22–23, ECF No. 71.) Plaintiffs claim that the question of whether such acts are "unfair" is one of fact best left to the jury.  (*Id.* at 23.)  Under the UCL, however, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544.  Plaintiffs' allegations, if true, allege unfair acts in a more generalized moral sense.  *See F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (explaining that "a practice that is neither in violation of the antitrust laws nor deceptive [can] nonetheless [be] unfair" if it is "immoral, unethical, oppressive, or unscrupulous").  However, Plaintiffs' allegations fail to allege acts that more narrowly violate the spirit of the antitrust laws, such as horizontal price fixing, exclusive dealing, or monopolization.  *See* Holmes & Mangiaracina, Antitrust Law Handbook § 7:2.  Accordingly, Plaintiffs do not allege unfair business practices within the meaning of the UCL.

Finally, Plaintiffs argue that LEC has engaged in fraudulent business practices by promoting the show and claiming to be its sole owners.  (Pls.' Resp. in Opp'n 23–24, ECF No. 71.)  The Court agrees that such acts are fraudulent under the UCL.  "The fraud prong of the UCL is unlike common law fraud or deception.  A violation can be shown even if no one was actually deceived[ or] relied upon the fraudulent practice. . . .  Instead, it is only necessary to show that members of the public are likely to be

deceived." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (internal quotation marks, citations, and alteration omitted).  Accepting Plaintiffs' allegations as true, LEC is actively trying to deceive the public into believing that Plaintiffs' show is its own.   And, because Plaintiffs are unable to promote or distribute the show themselves, LEC is likely to deceive the public into believing this to be true. Accordingly, Plaintiffs have pleaded with adequate specificity that LEC engaged in unlawful and fraudulent acts plausibly violating the UCL, and thus the Court **DENIES** LEC's MTD as to this claim.

## J.   Claim 12: Misappropriation of Ideas

The Court finds that Plaintiffs' twelfth claim is preempted by the Copyright Act of 1976 ("the Act").  "Preemption occurs when (1) the work at issue comes within the subject matter of copyright and (2) the rights granted under state law are 'equivalent to any of the exclusive rights within the general scope of copyright' set forth in the Act." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000) (quoting *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)).

First, because Plaintiffs' ideas have been affixed in a tangible, copyrighted work—the GACT footage—Plaintiffs' twelfth claim falls within the scope of federal copyright law.  *See id.* at  1057–59.  Second, the rights afforded by the Act are equivalent because Plaintiffs "allege an implied-in-fact contract not to use [their] ideas and concepts . . . without compensating [them]," rather than a contract that "protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution, or display."  *Id.* at 1062, 1060–61 (citation omitted).  Accordingly, Plaintiffs' twelfth claim is preempted, and therefore this Court **GRANTS WITH PREJUDICE** LEC's MTD as to this claim.

## K.   Claim 13: Intentional Interference with Contractual Relations

According to the Supreme Court of California,

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The third element incorporates a requirement that the defendant's "alleged wrongful or unjustified conduct caused the breach." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).

LEC argues that Plaintiffs' general allegations "fail to provide any specifics about: (1) the various contracts or the terms thereof; (2) the identity of the defendant that allegedly interfered with which contract; (3) whether there was an actual breach of any contract . . . [;] and (4) the intentional act that was independently wrongful." (MTD 24, ECF No. 67-1; *see also* Reply 14–15, ECF No. 75-3.) LEC further suggests that Plaintiffs cannot allege damages at all, much less damages *caused* by LEC, because "the television series at issue was going to air on PBS and it is nearly axiomatic that PBS does not pay for content." (*Id.* at 25.) Plaintiffs, on the other hand, claim to have adequately pleaded all five elements. (Pls.' Resp. in Opp'n 25, ECF No. 71.) The Court agrees with Plaintiffs.

First, Plaintiffs plead the existence of valid contracts with Macy's and Alexander, and have attached the contracts as exhibits to the Complaint. (*See* Compl., ECF Nos. 1, 1-1.) Second, the Complaint contains sufficient allegations that LEC knew of Plaintiffs' various contracts. (*See id.* ¶¶ 50 (Dummler acknowledged Macy's role as a GACT sponsor), 68 (O'Donnell became involved in GACT when he grew concerned that Macy's had not paid its sponsorship fees, and inserted himself into Plaintiffs' relationships with, *inter alia*, Macy's, Whirlpool, and Alexander), 74 (Plaintiffs explained to Defendants "how much money [Plaintiffs] would lose if the Tour continued without Macy's performance of its promises"), 78(e) (Defendants knew Macy's had neither signed the purchase order nor paid its sponsorship fees), 161 (Defendants knew of Plaintiffs' "existing contracts and relationships with, among others, Alexander, WTTW, APT, chefs, and public broadcasting stations").)

Third, Plaintiffs allege that LEC, through Dummler and O'Donnell, engaged in the following intentional acts designed to induce third parties to breach their contracts with Plaintiffs: giving Macy's at least some of the CCT Assets; shooting and editing the remaining GACT episodes for Macy's; and becoming involved, "over the objections of [Plaintiffs], into the relationships of [Plaintiffs], Macy's, Whirlpool, and Alexander, among others," and "attempt[ing] to renegotiate those relationships, for the benefit of LEC." (Compl. ¶¶ 68, 78, ECF No. 1.) Plaintiffs further allege that, "[d]espite knowing of these contracts and existing business relationships, said Defendants, and each of them, intentionally interfered with those contracts and business relationships." (*Id.* ¶ 162.) These allegations satisfactorily allude that these acts caused Macy's, Whirlpool, and/or Alexander to forego their contractual duties to Plaintiffs and instead market GACT as their own, thereby intentionally disrupting Plaintiffs' contractual relationships with those parties.

Fourth, Plaintiffs allege an actual breach of their contract with Macy's, as Macy's never made its third sponsorship payment. (*Id.* ¶ 75.) Finally, Plaintiffs allege damages, not only monetary, but also to their "business, reputation and good will." (*Id.* ¶¶ 163–66.) These harms are purported to be the result of LEC's interference. Further, even if—as LEC alleges—Plaintiffs would have received no direct compensation from public broadcasting stations for the GACT content, missing out on the opportunity to market GACT may nonetheless have harmed Plaintiffs by causing them to lose the opportunity to gain publicity and positive ratings that could have led to further business. Further, a cooking show seems particularly well-suited to the marketing of additional revenue-generating tie-ins such as, *inter alia*, cookware, packaged foods, cookbooks, T-shirts, and restaurants. Accordingly, Plaintiffs plead a plausible claim for intentional interference with contractual relations, and thus the Court **DENIES** LEC's MTD as to this claim.

**L.    *Claims 14 and 16: Intentional and Negligent Interference with Prospective Economic Advantage***

To state a claim for intentional interference with prospective economic

advantage, a plaintiff must allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Youst v. Longo*, 729 P.2d 728, 733 n.6 (1987) (citing *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975)).  Similarly, a plaintiff pleads a claim for negligent interference with prospective economic advantage if he alleges:

> (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997) (citations omitted).  "[A]s a matter of law, a threshold causation requirement exists for maintaining a cause of action for either tort, namely, proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference." *Id.* (emphasis in original).

As for the intentional form of the tort, the Court has already found, with regards to Plaintiffs' thirteenth claim, that Plaintiffs have satisfactorily pleaded all five elements of this claim. (*See supra* pp. 20–21.)  Accordingly, the Court **DENIES** LEC's MTD as to this claim.

As for the negligent form of the tort, Plaintiffs allege: (1) the requisite economic relationship via their contracts with Macy's and Alexander; (2) that LEC knew of those relationships and not only was aware that its actions could interfere with the relationships, but actually intended to so interfere; and (4) that LEC's actions caused Plaintiffs' damage. (*See supra* pp. 20–21.)  As to the third element, under California law the elements of a claim for negligence are: "(1) the existence of a duty to exercise

due care; (2) breach of that duty; (3) causation; and (4) damages." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959–60 (S.D. Cal. 2012) (citing *Paz v. California*, 994 P.2d 975, 980–81 (Cal. 2000)).  The Court has already determined that the Complaint alleges that LEC owed Plaintiffs a contractual duty of care.  (*See supra* p. 10.)  The Court has also found that LEC breached its contract, and hence that duty.  (*See supra* pp. 6–8.)  And, the Court has found that, in so doing, LEC harmed Plaintiffs.  (*See supra* p. 21.)  Accordingly, Plaintiffs also state a claim for negligent interference with prospective economic advantage, and the Court **DENIES** LEC's MTD as to this claim.

### M.	Claim 15: Negligent Interference with Contractual Relations

Finally, LEC argues that this claim must be dismissed because California does not recognize the tort of negligent interference with contractual relations.  (MTD 25–26, ECF No. 67-1.)  The Court agrees, and accordingly **GRANTS WITH PREJUDICE** LEC's MTD as to this claim.  *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636–37 (1960) (explaining that California courts "have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties," and refusing to recognize said cause of action because "to so hold would constitute an unwarranted extension of liability for negligence"); *see also Express Diagnostics Int'l, Inc. v. Tydings*, No. C 06-01346 JW, 2009 WL 111736, at *7 n.14 (N.D. Cal. Jan. 15, 2009) (citation omitted) ("[T]he Supreme Court [of California] has yet to disapprove *Fifield*.").

### CONCLUSION

In light of the foregoing, the Court **GRANTS** LEC's Requests for Judicial Notice and **GRANTS IN PART AND DENIES IN PART** LEC's Motion to Dismiss.

The Court **GRANTS** LEC's Motion to Dismiss **WITHOUT PREJUDICE** as to claim 9.  The Court **GRANTS** LEC's Motion to Dismiss **WITH PREJUDICE** as to claims 12 and 15, as amendment of these claims would be futile.  *See DeSoto*, 957 F.2d at 658.  Finally, the Court **DENIES** LEC's Motion to Dismiss as to claims 2, 5,

6, 7, 8, 10, 11, 13, 14, and 16.

If Plaintiffs wish, they **SHALL FILE** an amended complaint within <u>fourteen (14) days</u> of the date on which this Order is electronically docketed. *Failure to file an amended complaint by this date may result in dismissal of Plaintiffs' claims against LEC with prejudice.*

**IT IS SO ORDERED**.

DATED:  April 25, 2014

Honorable Janis L. Sammartino
United States District Judge