# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELEBRITY CHEFS TOUR, LLC, a California limited liability company; and PROMARK PRODUCTIONS, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br><br><br>MACY'S, INC, a Delaware corporation; WHIRLPOOL CORPORATION, a Delaware corporation; LEC MEDIA, LLC, an Illinois limited liability company; EXECUTIVE PROGRAM SERVICES, INC., a Washington corporation; JACK O'DONNELL, an individual; SCOTT DUMMLER, an individual; DEVIN ALEXANDER, INC, a California corporation; DEVIN ALEXANDER, a.k.a. RENEE SIMONE, an individual; and DOES 1–10, inclusive,<br><br>Defendants. | CASE NO. 13-CV-2714 JLS (KSC)<br><br>**ORDER: (1) GRANTING DEFENDANT EXECUTIVE PROGRAM SERVICES, INC.'S REQUEST FOR JUDICIAL NOTICE; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT EXECUTIVE PROGRAM SERVICES, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>(ECF No. 66) |

Presently before the Court is Defendant Executive Program Services, Inc.'s ("EPS") Motion to Dismiss ("MTD") Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 66.) Also before the Court is EPS's Request for Judicial Notice ("RJN") (ECF No. 66-2), as well as Plaintiffs Celebrity Chefs Tour, LLC ("CCT") and Promark Productions, LLC's ("Promark," and, collectively, "Plaintiffs") Response in Opposition to (ECF No. 72) and EPS's Reply in Support of (ECF No. 75) the MTD. The Court vacated the motion hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 74.) Having considered the parties' arguments and the law, the Court **GRANTS** EPS's RJN and **GRANTS IN PART AND DENIES IN PART** EPS's MTD.

## BACKGROUND

The Court thoroughly summarized the factual and procedural background of this case in ruling on a related motion to dismiss, and accordingly the Court hereby incorporates by reference the background as set forth therein. (*See* Order 2–7, ECF No. 78.)

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

EPS asks the Court to judicially notice the following four (4) documents, all filed with the United States Patent and Trademark Office: (1) Trademark/Service Mark

Application for "Great American Chefs Tour," Serial No. 85284912, filed on April 4, 2011; (2) Office Action regarding Trademark Application Serial No. 85284912; (3) Response to Office Action regarding Trademark Application Serial No. 85284912; and (4) Trademark Registration No. 4,145,234, registered May 22, 2012. (*See generally* RJN, ECF No. 66-2.) All of these documents are available to the public and are certified and maintained by an official office. Their accuracy cannot therefore be reasonably disputed. Accordingly, the Court **GRANTS** EPS's RJN as to all four (4) documents.

## MOTION TO DISMISS

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.

**II.     Analysis**

Plaintiffs assert the following seventeen claims: (1) breach of contract (Macy's); (2) breach of contract (Dummler, LEC, and O'Donnell); (3) breach of contract (Alexander); (4) intentional misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (5) negligent misrepresentation (Alexander, DAI, Dummler, LEC, Macy's, and O'Donnell); (6) conversion (all Defendants); (7) trademark infringement (all Defendants); (8) false designation of origin (all Defendants); (9) trademark dilution (all Defendants); (10) common law unfair competition (all Defendants); (11) unfair competition in violation of California Business and Professions Code § 17200 (all Defendants); (12) misappropriation of ideas (all Defendants); (13) intentional interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (14) intentional interference with prospective economic

advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (15) negligent interference with contractual relations (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); (16) negligent interference with prospective economic advantage (EPS, Dummler, LEC, Macy's, O'Donnell, and Whirlpool); and (17) declaratory relief (EPS, LEC, Macy's, and Whirlpool).[1]  The Court addresses each in turn.

A.     *Request for Punitive Damages*

As a preliminary matter, EPS asserts that Plaintiffs' trademark claims fail because Plaintiffs seek punitive damages, which are unavailable under the Lanham Act. (MTD 10 n.2, ECF No. 66-1.)  However, "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D. Cal. July 16, 1996) (citation, alteration, and internal quotation marks omitted).  Moreover, the Court declines to rule on the propriety of Plaintiffs' requests for punitive damages because a Rule 12(b)(6) motion is the improper vehicle for raising this argument.  Rather, EPS should have addressed this issue in a Rule 12(f) motion to strike.  *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1300 (S.D. Cal. 2011); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000); *Clement v. Am. Greetings Corp.*, 636 F. Supp. 1326, 1332, 1333–34 (S.D. Cal. 1986).

B.     *Claim 6: Conversion*

The elements of a claim for conversion consist of (1) ownership or a right to possession, (2) wrongful disposition of the property, and (3) damages. *G. S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Moreover, § 229 of the Restatement (Second) of Torts provides:

> One who receives possession of a chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel.

---

[1] EPS does not seek to dismiss this seventeenth claim, and accordingly this Order does not address it.

California Courts have cited approvingly to § 229. *See, e.g.*, *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 157 n.4 (1990); *Strutt v. Ontario Sav. & Loan Ass'n*, 28 Cal. App. 3d 866, 874–75 (1972).

EPS first argues that Plaintiffs' conversion claim fails because Plaintiffs "do not allege EPS actually converted the property by a wrongful act. Plaintiffs admit they <u>voluntarily shipped</u> (i.e. consented) the CCT Assets to <u>LEC's</u> offices in Chicago—not to EPS; therefore, there can be no wrongful act." (MTD 8, ECF No. 66-1 (emphasis in original).) Plaintiffs argue that they properly allege a claim for conversion because "an action for conversion lies not only in the taking of another's property, but also in the wrongful retention and/or use of that property." (Pls.' Resp. in Opp'n 9, ECF No. 72.) Plaintiffs claim that, because EPS knew that Plaintiffs had rights in the CCT Assets but nonetheless distributed the CCT Assets to public television stations, EPS engaged in conversion. (*Id.*) The Court agrees with Plaintiffs.

Plaintiffs sufficiently plead the elements of a conversion claim. First, Plaintiffs repeatedly assert their ownership of the GACT copyright, trademark, and content. (Compl. ¶¶ 14–16, 28, 48, 118, ECF No. 1.) While Plaintiffs purportedly "consented to LEC holding the CCT Assets temporarily until it could be determined where they should be sent," Plaintiffs have since requested the return of the CCT Assets, but Defendants have refused to return them. (*Id.* ¶¶ 75, 77, 119.) Thus, Plaintiffs had a right to immediate possession of the CCT Assets, including the Tour footage.

Second, Plaintiffs allege that various public television stations have informed Plaintiffs that they received GACT from EPS. (*Id.* ¶ 83.) Plaintiffs allege that they subsequently "contacted EPS, who confirmed that they had contracted with LEC to distribute the TV Show and had, in fact, been distributing the TV Show to public broadcasting stations nationwide." (*Id.* ¶ 84.) That EPS may not have ever possessed the physical tapes is of no consequence, as it nonetheless gained possession of and

///

///

claimed an interest in the intellectual property contained therein.[2] EPS claims that Plaintiffs fail to allege that EPS knew of Plaintiffs' purported ownership interest in the CCT Assets. (Reply 4, ECF No. 75.) Presumably, EPS is arguing that it engaged in no "wrongful" behavior. However, Plaintiffs allege:

> EPS also informed [Plaintiffs] that they had been made aware of [Plaintiffs'] ownership of the TV Show and that, before agreeing to distribute the TV Show, EPS had insisted on and obtained from LEC an agreement indemnifying EPS from any claims by [Plaintiffs] that might arise out of their distribution of the TV Show.

(Compl. ¶ 84, ECF No. 1.) Pursuant to Federal Rule of Civil Procedure 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, Plaintiffs allege that EPS engaged in the wrongful disposition of the CCT Assets.

Third, Plaintiffs allege that they "ha[ve] been damaged" by their loss of the CCT Assets and their inability to distribute GACT themselves. (Compl. ¶¶ 102, 122, ECF No. 1.) EPS contends that the claim must be dismissed because Plaintiffs improperly seek compensatory damages rather than the damages for conversion mandated by California Civil Code § 3336. (MTD 8–9, ECF No. 66-1.) However, Plaintiffs have alleged all that is required of them on a motion to dismiss. *See Summit Tech*, 933 F. at 927–28. Accordingly, Plaintiffs have stated a prima facie claim for conversion, and the Court **DENIES** EPS's MTD as to this claim.

## C.     *Claims 7 & 8: Trademark Infringement and False Designation of Origin*

To state a claim for federal trademark infringement under the Lanham Act, a plaintiff must show: "'(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th

---

[2] "In short, California does not follow the *Restatement*'s strict requirement that some document must actually represent the owner's intangible property right. On the contrary, courts routinely apply the tort [of conversion] to intangibles without inquiring whether they are merged in a document." *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2002) (explaining that California jurisprudence "recognizes conversion of music recordings, radio shows, customer lists, regulatory filings, confidential information and even domain names").

1  Cir. 2011) (citation omitted).  A claim for false designation of origin is subject to "[t]he
2  same standard," except a claim for false designation of origin does not require that the
3  mark be registered.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d
4  1036, 1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. §§ 1114(1) (trademark infringement),
5  1125(a)(1) (false designation of origin)).  Thus, the Court analyzes these claims jointly.
6       As to the first element, EPS argues that judicially noticeable records establish that
7  only CCT owns the GACT trademark.  (MTD 9, ECF No. 66-1.)  The Court, however,
8  disagrees.  The public records at issue are dated June 2011 through May 2012.  Thus,
9  it is possible that CCT assigned the GACT mark to Promark sometime after May 22,
10 2012 but prior to or during the acts comprising Plaintiffs' allegations.  Thus, the Court
11 declines at this time to dismiss the trademark claims against Promark on this basis.
12 Plaintiffs allege ownership of the mark as to both CCT *and* Promark, and thus Plaintiffs
13 have sufficiently alleged the first element of their trademark infringement claim.  (*See*
14 Compl. ¶¶ 16, 125, ECF No. 1.)
15       As to the second element, EPS argues that Plaintiffs fail to allege "that EPS is
16 using any trademark, let alone using CCT's trademark or a colorable imitation of CCT's
17 mark on goods in commerce without CCT's consent or that such use is likely to cause
18 confusion, mistake or deceive the public."  (MTD 9, 10–11, ECF No. 66-1.)  The Court,
19 however, disagrees.  When evaluating likelihood of confusion on a motion to dismiss,
20 "[i]f the court determines as a matter of law from the pleadings that the goods are
21 unrelated and confusion is unlikely, the complaint should be dismissed."  *Murray v.*
22 *Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. Ltd. v. Sears,*
23 *Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981)).  But, while likelihood of
24 confusion *is capable* of being decided as a matter of law, "[w]hether confusion is likely
25 is a factual determination woven into the law" that courts "routinely treat . . . as [an
26 issue] of fact" best left for determination by a jury.  *Levi Strauss & Co. v. Blue Bell,*
27 *Inc.*, 778 F.2d 1352, 1356, 1356 n.5 (9th Cir. 1985).
28       It does not appear as a matter of law that consumer confusion is unlikely here.

Plaintiffs allege that "Defendants have used and are using [Plaintiffs'] registered mark." (Compl. ¶ 126, ECF No. 1.) Plaintiffs claim that Defendants are using the mark in commerce, "in connection with the distribution[] and/or advertising of a television show." (*Id.*) More specifically, Plaintiffs allege that EPS has distributed GACT to public broadcast stations and the public pursuant to a contract with LEC, despite knowing that Plaintiffs own all interests in GACT, and that LEC and other Defendants have attempted "to deceive the public and public television stations" into believing that GACT belongs to them. (*Id.* ¶¶ 83–86.) Confusion seems particularly likely given that the goods are so similar—indeed, Plaintiffs claim that Defendants are in reality marketing Plaintiffs' television show as Defendants' own. (*Id.* ¶¶ 79–87.)

EPS argues that, in their Opposition, Plaintiffs "reveal" that the true basis for their trademark claims against EPS is the use of a similar *name*, not a similar *mark*. (Reply 5, ECF No. 75.) EPS contends that, because Plaintiffs disclaimed a "legally protectable interest in any one of the words used in their trademark separate and apart from the registered mark," Defendants' use of the name "American Chefs on Tour" cannot alone constitute trademark infringement. (*Id.* at 5–6 (citing RJN Ex. 2, ECF No. 66-3.)

In ruling on a Rule 12(b)(6) motion to dismiss, a court generally cannot consider matters outside of the pleadings without converting the motion into one for summary judgment. "Memoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleadings." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (citations and internal quotation marks omitted). However, "[c]onsideration of legal documents outside the pleadings is limited to the non-factual contents thereof." *Jones v. Penn Nat'l Ins. Co.*, 835 F. Supp. 2d 89, 94 (W.D.N.C. 2011) (citing *Engler v. Cendant Corp.*, 434 F. Supp. 2d 119 (E.D.N.Y. 2006); *Thomas v. D.C. Gov't*, 580 F. Supp. 2d 142 (D.D.C. 2008)); *accord Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984) (emphasis added) (explaining that "*legal arguments* in briefs" are properly considered

in Rule 12(b)(6) motions)). Thus, "'[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition.'" *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

The Court declines to convert this motion into one for summary judgment. Moreover, Plaintiffs' Complaint explicitly alleges that Defendants' trademark infringement arises from their "use of [GACT] *names and marks*" without Plaintiffs' authority and in a manner likely to cause confusion. (Compl. ¶ 126, ECF No. 1.) Merely because Plaintiffs chose to focus on Defendants' use of a confusingly similar *name* in their Opposition does not negate the allegations in their Complaint that Defendants also used Plaintiffs' protected *mark*. The Court, therefore, declines to dismiss these claims on this basis. Accordingly, the Court finds that Plaintiffs have satisfactorily alleged federal trademark infringement and false designation of origin claims and accordingly **DENIES** EPS's MTD as to these claims.

### D.   Claim 9: Trademark Dilution

To plead a claim for federal trademark dilution, a plaintiff must show that it owns a famous and distinctive trademark, that the defendant began using the mark in commerce after the mark became famous, and that the defendant's use of the mark is likely to cause dilution by blurring or tarnishment. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089–90 (9th Cir. 2010) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007)); *see also* 15 U.S.C. § 1125(c).

The parties disagree as to whether Plaintiffs adequately allege a famous mark. "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is famous, a court may consider "all relevant factors," including: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and

1  geographic extent of sales of goods or services offered under the mark"; (3) "[t]he
2  extent of actual recognition of the mark"; and (4) whether the mark is registered. *Id.* §
3  1125(c)(2)(A)(i)–(iv). EPS urges that Plaintiffs do not allege that a large percentage of
4  the general consuming public recognizes the GACT mark, only that it was presented to
5  several television stations in 2011 and at a public television industry event. (MTD 13,
6  ECF No. 66-1.) Plaintiffs counter that EPS's arguments go to the merits of the case
7  rather than the sufficiency of the Complaint. (Pls.' Resp. in Opp'n 11–12, ECF No. 72.)
8  The Court, however, agrees with EPS.

9        The Court notes that the GACT mark is federally registered, and thus the fourth
10 factor favors a finding of fame. However, Plaintiffs make no allegations about any
11 advertising and publicity efforts; Plaintiffs apparently made no sales of any GACT
12 content; and Plaintiffs fail to allege any facts concerning *wide-reaching* access to, much
13 less recognition of, their mark. Plaintiffs allege that their mark was well-received by
14 television stations and had a "substantial presence" at the APT Fall Marketplace, which
15 appears to have been attended primarily by persons in the entertainment industry.
16 (Compl. ¶ 138, ECF No. 1.) Plaintiffs also argue that the show was filmed over the
17 course of ten live events in several major cities. (*Id.*) However, these allegations fall
18 short of "wide recognition," and at most suggest that the mark might be famous in the
19 insufficient "niche" market of the entertainment industry. *See Planet Coffee Roasters,*
20 *Inc. v. Dam*, No. SACV 09-00571-MLG, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12,
21 2009) (citations omitted). Thus, even applying the relatively lax standard governing
22 Rule 12(b)(6) motions, the Court finds that Plaintiffs' conclusory allegations of fame
23 are fatally defective to stating a "facial[ly] plausib[le]" claim for trademark dilution.
24 *See Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS WITHOUT**
25 **PREJUDICE** EPS's MTD as to this claim.

26 **E.    Claim 10: Common Law Unfair Competition**
27       "'The common law tort of unfair competition is generally thought to be
28 synonymous with the act of "passing off" one's goods as those of another . . . [, or] acts

analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997), *not followed on other grounds by McKendall v. Crown Control Corp.*, 122 F.3d 803 (1997) (alteration in original) (quoting *Bank of the W. v. Superior Court*, 2 Cal 4th 1254, 1263 (1992)); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Bank of the W.*, 2 Cal 4th at 1263 (citation omitted). "The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) (citations omitted).

EPS argues that this claim must be dismissed because Plaintiffs hold a valid, registered trademark. (*See* MTD 13–14, ECF No. 66-1; Reply 7, ECF No. 75.) Plaintiffs argue that the mere existence of a valid, registered trademark does not preclude their claim. (Pls.' Resp. in Opp'n 12, ECF No. 72.) The Court agrees with Plaintiffs. Courts have routinely entertained claims for both trademark infringement and common law unfair competition, implying that the two causes of action are not mutually exclusive, particularly at the pleading stage. *See, e.g.*, *Hokto Kinoko*, 810 F. Supp. 2d 1013; *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[T]he Ninth Circuit 'has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims under the Lanham Act.' . . . Therefore, the Court jointly analyzes Plaintiff's trademark infringement, false designation of origin, state statutory unfair competition, and state common law unfair competition claims."); *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197 (C.D. Cal. 2012); *Vallavista Corp. v. Amazon.com, Inc.*, 657 F. Supp. 2d 1132 (N.D. Cal. 2008); *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233 (E.D. Cal. 2007); *Area 55, Inc.*

*v. Pandamerican LLC*, No. 10-CV-269-H (NLS), 2010 WL 3564715 (S.D. Cal. Sept. 10, 2010); *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426 (1997). Thus, the Court does not believe that Plaintiffs' common law unfair competition claim is precluded as a matter of law. Moreover, because the Court has already determined that Plaintiffs plausibly allege EPS's distribution of confusingly similar goods (*see supra* pp. 8–9), the Court **DENIES** EPS's MTD as to this claim.

### F.     Claim 11: Violation of California Business and Professions Code § 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

Plaintiffs argue that, because EPS's actions constitute business practices, and because those acts "form the basis of several other claims for relief" in the Complaint, they have satisfactorily alleged unlawful business activities. (Pls.' Resp. in Opp'n 13–14, ECF No. 72.) The Court agrees. "An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985) (internal quotation marks omitted) (quoting *People v. McKale*, 25 Cal. 3d 626, 631–32 (1979)). The act of distributing a television show pursuant to the terms of a contract is certainly a business practice. Further, because the Court has found that Plaintiffs have plausibly alleged several violations of law, those violations can serve as predicate unlawful business activities under the UCL.[3] *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (internal quotation marks and citations omitted) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful

---

[3] EPS argues that "the plaintiff in a UCL action must be either a consumer or a competitor of the defendant." (MTD 15, ECF No. 66-1.) Yet, EPS is mistaken. The class of persons who may bring claims under the UCL is broader than EPS asserts. Indeed, any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to pursue a UCL claim. Cal. Bus. & Prof. Code § 17204; *see Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2009) (finding that credit card holder had standing to assert UCL claim against credit card issuer); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1087 (Cal. 2010) (finding that pharmacies, having "had business dealings with" pharmaceutical companies, had standing to assert UCL claim).

practices that the unfair competition law makes independently actionable.").

Plaintiffs also claim to have pleaded unfair business practices by "alleg[ing] that EPS, knowing of Plaintiffs' rights in the TV show and Plaintiffs' mark, distributed LEC and Macy's stolen and infringing show to public broadcast stations (under an indemnification agreement)." (Pls.' Resp. in Opp'n 13, ECF No. 72.) Plaintiffs claim that this is a question of fact best left to the jury. (*Id.*) EPS, however, argues that Plaintiffs fail to allege unfairness as it pertains to the UCL. (MTD 14–15, ECF No. 19-1.) The Court agrees with EPS that Plaintiffs fail to allege unfair business practices.

Under the UCL, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 973 P.2d at 544. Plaintiffs' allegations, if true, allege unfair acts in a more generalized moral sense. *See F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (explaining that "a practice that is neither in violation of the antitrust laws nor deceptive [can] nonetheless [be] unfair" if it is "immoral, unethical, oppressive, or unscrupulous"). However, Plaintiffs' allegations fail to allege acts that more narrowly violate the spirit of the antitrust laws, such as horizontal price fixing, exclusive dealing, or monopolization. *See* Holmes & Mangiaracina, Antitrust Law Handbook § 7:2.

Finally, Plaintiffs argue that EPS has engaged in fraudulent business practices by "distribut[ing] a stolen television show with a title confusingly similar to Plaintiffs' mark," an act "likely to deceive the public." (Pls.' Resp. in Opp'n 14, ECF No. 72.) The Court agrees. "The fraud prong of the UCL is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived[ or] relied upon the fraudulent practice. . . . Instead, it is only necessary to show that members of the public are likely to be deceived." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (internal quotation marks, citations, and alteration omitted). Accepting Plaintiffs' allegations as true, Defendants are actively trying to deceive the public into

believing that Plaintiffs' show is their own. And, the Court has found that Plaintiffs have plausibly alleged possible consumer confusion. (*See supra* pp. 8–9.) Accordingly, Plaintiffs have pleaded with adequate specificity that EPS engaged in unlawful and fraudulent business practices plausibly violating the UCL, and thus the Court **DENIES** EPS's MTD as to this claim.[4]

### G.   *Claims 12, 13, 14, 15, and 16*

In their Opposition, Plaintiffs state that the inclusion of EPS "in the titles of the twelfth–sixteenth claims for relief was an oversight. . . . Plaintiffs currently make no claims against EPS" for the twelfth through sixteenth causes of action. (Opp'n 14–15, ECF No. 72.) Accordingly, the Court **GRANTS** EPS's MTD as to these claims.

### CONCLUSION

In light of the foregoing, the Court **GRANTS** EPS's Request for Judicial Notice and **GRANTS IN PART AND DENIES IN PART** EPS's Motion to Dismiss. The Court **GRANTS** EPS's Motion to Dismiss **WITHOUT PREJUDICE** as to claims 9, 12, 13, 14, 15, and 16. The Court **DENIES** EPS's Motion to Dismiss as to claims 6, 7, 8, 10, and 11.

If Plaintiffs wish, they **SHALL FILE** an amended complaint within fourteen (14) days of the date on which this Order is electronically docketed. *Failure to file an amended complaint by this date may result in dismissal of Plaintiffs' claims against EPS with prejudice.*

**IT IS SO ORDERED**.

DATED: April 25, 2014

Honorable Janis L. Sammartino
United States District Judge

---

[4] As the Court has already explained with regards to Plaintiffs' requests for punitive damages and their claim for conversion, "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled." *Summit Tech.*, 933 F. Supp. at 927–28 (citation, alteration, and internal quotation marks omitted). Hence, EPS's argument that Plaintiffs' claim fails because it seeks unrecoverable remedies fails. (*See* MTD 16, ECF No. 66-1; Reply 8–9, ECF No. 75.)